## STATE et al. v. RUSSELL, Inc.

No. 6384.   Decided November 10, 1941.   (118 P. 2d 679.)

See 63 C. J. Trade-marks and Trade-names and Unfair Competition, Sec. 100; Unfair Competition in Advertising, notes, 17 A. L. R., 760, and 30 A. L. R. 615,

*Edward F. Richards,* of Salt Lake City, and *Grover A. Giles,* Atty. Gen., for appellant.

*George A. Critchlow,* of Salt Lake City, for respondent.

PRATT, Justice.

Under and pursuant to paragraph (4), section 14, chapter 19, Laws of Utah 1937, our Trade Commission instituted suit against Russell, Inc., a corporation, to enjoin it

from engaging in what the Commission had determined to be an unfair method of competition in the sale of gasoline and oil. See par. (1), same section. After issues joined and a trial, the lower court found in favor of Russell, Inc., and the Commission has appealed the case. Russell, Inc., has not filed briefs in the case before this Court.

The method of competition attacked is this: Each service station operator gave to his customers who desired them little books containing blank pages in which to paste stamps. For each 10c of merchandise purchased the purchaser was issued a stamp redeemable at the rate of one-half of one mill. The purchaser, if he desired, could accumulate the stamps, paste them in the book, and when the book was filled, take it back for redemption, for at least a minimum amount of goods, but which might be for as high as $20 in cash or twenty gallons of gasoline. As to whether or not either merchandise or cash in excess of the minimum was acquired by the purchaser depended upon what was found under a seal upon the books which was broken open at the time of the return of the book. Any tampering with the seal before the book was returned deprived the customer of this chance. The book filled contains 180 stamps. The record before the lower court discloses that the company uses this means of advertising and putting its products before the public, rather than the usual method adopted by competitors.

Under the assignments of error made, the case can be decided by the answer to this question: Does this method of "advertising" constitute unfair competition?

We think it does. The appeal to the public is an appeal to the gambling instincts of the individual. Quite aside from the question of whether or not it is a subject for criminal prosecution, it is productive in the individual of a desire to take a chance. It has greater drawing power than the ordinary slot machine because the purchaser does get value for the money he expends in the form of gasoline or oil purchased. Its drawing power does not lie in a superiority of

product, or of business methods, or of advertising, but in the desire of the individual for a thrill of acquiring something for nothing.

If we were to approve this method of doing business as fair competition we would throw the doors open for an unscrupulous merchant to foist an inferior product upon the public by appealing to their gambling instincts. It is clearly against public policy. The fact that in this case we are not dealing with such a merchant or that there is no contention that the product sold to the public is inferior, or the fact that it is apparently agreed that the product is on a par with the products of competitors, does not make this method of competition any the less against public policy. The following cases support this decision. *Federal Trade Commission* v. *R. F. Keppel & Bro.*, 291 U. S. 304, 54 S. Ct. 423, 78 L. Ed. 814; *Ostler Candy Co.* v. *Federal Trade Commission*, 10 Cir., 106 F. 2d 962; *Federal Trade Commission* v. *Raladam Co.*, 283 U. S. 643, 51 S. Ct. 587, 75 L. Ed. 1324, 79 A. L. R. 1191; *Featherstone* v. *Independent Service Station Ass'n*, Tex. Civ. App., 10 S. W. 2d 124. See annotation to Title 15, Sec. 45, U. S. Code Annotated.

The decree of the lower court is reversed and the case remanded with directions to enter a decree in favor of the plaintiffs and appellants to conform to this decision. Costs to appellant.

MOFFAT, C. J., and LARSON and McDONOUGH, JJ., concur.

WOLFE, Justice.

I concur on the ground that the scheme had in it the inducement of trade by a gamble. Whether the giving of stamps itself redeemable in money or goods of a fixed amount could be considered an unfair method of competition or merely a rebate and thus a sale for less need not now be considered.

For a time the Federal Trade Commission busied itself in preventing resale price maintenance as a method of un-

fair competition. The Supreme Court of the United States against four dissents had prescribed the practice of refusing to sell to retailers who cut prices or refused to resell at designated prices. *Federal Trade Commission* v. *Beech Nut Packing Co.*, 257 U. S. 441, 42 S. Ct. 150, 66 L. Ed. 307, 19 A. L. R. 882. In this case the

"Supreme Court, however, determined that the precedents under the Sherman Act were material only so far as they declare 'public policy' and that the essential agreement, combination or conspiracy might be 'implied from a course of dealing or other circumstances.'"

McFarland, "Judicial Control of Federal Trade Commission and Interstate Commerce Commission," p. 49. Certainly in the Beech Nut case, *supra*, and other cases the Supreme Court of the United States took into consideration the declaration of public policy contained in the Sherman Anti-Trust Act, 15 U. S. C. A. §§ 1-7, 15 note, and the decisions which delineated the extent to which traders might go [*United States* v. *Colgate & Co.*, 250 U. S. 300, 39 S. Ct. 465, 63 L. Ed. 992, 7 A. L. R. 443; *Dr. Miles Medical Co.* v. *John D. Park & Sons Co.*, 220 U. S. 373, 31 S. Ct. 376, 55 L. Ed. 502; *United States* v. *A. Schrader's Son, Inc.*, 252 U. S. 85, 40 S. Ct. 251, 64 L. Ed. 471; *Frey & Son* v. *Cudahy Packing Co.*, 256 U. S. 208, 41 S. Ct. 451, 65 L. Ed. 892.] without infringing that Act, as a basis of determining the permissive powers of the Federal Trade Commission in this field of activity.

But the declarations of the Sherman Anti-Trust Act on public policy covered a field interrelated with that with which the Federal Trade Commission was required to deal, to wit, "unfair methods of competition." In other words conduct which had a "dangerous tendency unduly to hinder competition or to create monopoly" might also fall within the class of acts which independently of the Sherman Act against creating monopolies might be adjudged a "method of unfair competition." While perhaps we may not assume that these United States Supreme Court cases are authority

for the proposition that all acts against public policy as they affect trade constitute ipso facto "unfair methods of competition," it is difficult to conceive of a case where some act affecting trade has been declared contrary to public policy and yet would not be included in the term "unfair." In fact it is difficult to conceive of any act whether related to trade or otherwise which if declared as contrary to public policy would not if used by competitors to induce trade be included within the term "unfair." There may be such but we are unable to think of them now.

At all events, when the scheme of selling or advertising involves inducement thru a possible gain based on chance or lottery, I think the method must be dubbed as intrinsically unfair. Perhaps this is fundamentally so because a competitor in order successfully to compete must resort to a like device which would invite a general resort to schemes against public policy. If that be the crux of the unfair method, the main opinion would certainly be correct in tying the basis of the decision to public policy.