COMMERCIAL TRAVELERS' INS. CO. et al.
v. CARLSON, Insurance Commissioner.

No. 6536.   Decided May 12, 1943.   (137 P. 2d 656.)

See 29 Am. Jur., 289; 37 C. J., Life Insurance, sec. 51.

*Grover A. Giles,* Atty. Gen., and *A. U. Miner,* Asst. Atty. Gen., for appellant.

*F. Henri Henriod* and *Jesse R. S. Budge,* both of Salt Lake City, for respondents.

McDONOUGH, Justice.

In 1941 the plaintiff insurance company presented to defendant drafts of a proposed policy of insurance to be solicited and issued in the State of Utah, known as the "Dual-Pay" policy, requesting permit to sell and issue such form of policy in this state. The Insurance Commissioner denied the request by a written notice to the company. The plaintiff thereupon commenced an action in the district court to obtain a judgment to set aside the ruling of the Commissioner, to authorize plaintiff company to issue such proposed form of policy in this state, and to restrain the Commissioner from interfering with its issuance.

The questions submitted to the trial court for determination on stipulation of the parties may be thus summarized: (1) Whether the proposed policy, if issued, would be illegal as a wagering or lottery contract and hence contrary to public policy; and (2) whether its issuance is prohibited by

statute. The district court decided the questions in favor of plaintiffs and the Commissioner appeals to this court for reversal of the judgment.

The challenged policy form provides that respondent will pay the face amount thereof (A) To the insured upon the maturity of the policy as a mortality endowment as defined in the policy; or (B) to a named beneficiary upon the death of the insured before the maturity of the policy as a "mortality endowment." It also provides that if the stipulated premiums are paid for a full twenty years' period prior to the maturity of the policy either as a "mortality endowment" or by reason of death of the insured, the insured may surrender the policy and receive a fully paid-up policy for the face amount of the surrendered policy. In brief, the policy is the standard limited payment life insurance policy with the "mortality endowment" feature. Consequently, the sole question presented is whether the inclusion of the last named feature of the policy justified the refusal by the Commissioner to authorize its issuance in this state.

The "mortality endowment" provision is integrated with the other provisions. It is not added optionally by payment of an additional premium as in the case of double indemnity and disability provisions in the standard form of life insurance policies. One premium covers all of the insurance features and provisions. Each application for a "Dual-Pay" policy is stamped with the day, hour and minute it is received at the home office of the company, and the policy is automatically classified into the age group of the applicant. Various divisions are established by the company for each age group, and there are 26 numbers in each of such divisions represented by the letters of the alphabet. For instance, the company assigns the first application to the first number or the "A" position in the first division of the age group, and thereafter subsequent applications are assigned to the divisions containing the fewest number of policies until all the divisions are filled.

The "mortality endowment" provision specifies that the "policy shall mature as a mortality endowment and shall be payable when it becomes the oldest policy in force in its division and the company experiences a mortality loss under another policy in the same division." For example, if in division 1 policyholder numbered B or any other letter other than A dies while his policy as well as that of A are in good standing, the face amount of the policy issued to B or such other person in the group who dies is paid to his beneficiary, and in addition thereto, A's policy being the "oldest" in that division immediately matures as a "mortality endowment" and he is paid in cash the face amount of his policy even if he has paid only the first premium because the death of some other member of the group occurs before the second premium is due. The policy of A matures by the death of another in his division, and payment of the face amount thereof discharges the obligation of the insurer, and consequently A is no longer a policy holder after such payment. Upon B's death, A being eliminated by payment, C would move into the position of A, and other policies would be sold to fill up the group.

Plaintiff contends policies identical in form with the proposed policy have been written for many years in a number of other states and that the same are recognized as legal. The particular statutes are not cited. However it appears that in the states of Alabama and Oklahoma, during the past ten years statutes have been enacted which prohibit the writing of any more policies of such character except to fill existing groups. The plaintiff relies on *Liberty National Life Insurance Co.* v. *Read,* D. C., 24 F. Supp. 103, 107, as supporting its contention that such form of policy is a valid form of insurance contract. Reference to that case indicates that the court did not consider the question of whether or not such policy is invalid in Oklahoma for any reason here suggested. In fact some companies were writing such form of policy with the sanction of the Insurance Commissioner who issued the cease and desist order against plain-

tiff. It appears that no question could have properly arisen in Oklahoma as to the form of the policy for the reason that companies were permitted under the statute to write such form of policy to fill existing groups. The actual question involved was whether there was discrimination between companies writing the same form of policy. The Insurance Commissioner issued his cease and desist order on the theory that it was warranted under the Oklahoma retaliatory statute. Plaintiff company was domiciled in Alabama. The court pointed out:

"The desist order herein sought to be enjoined is based upon no legal objection to the policy form itself nor upon any actuarial criticism, but upon an amendment to the so-called retaliatory law of Oklahoma (H. B. 190, approved April 28, 1937, 36 Okl. St. Ann. § 106) which prohibits any foreign company from writing any policy form in Oklahoma if the laws of the state of its domicile prohibit Oklahoma companies from writing therein such policy form."

The court held that the cease and desist order was arbitrary and discriminatory and based upon an erroneous interpretation of the Alabama statute. The cease and desist order did not purport to prevent all companies from writing the form of policy in question, and as pointed out in the opinion, other companies were actually writing such form of policy with the approval of the insurance department.

It is conceded in this case that the policy in controversy is actuarily sound. Probabilities of life expectancies are taken into consideration in computing the premium for each insurance feature of the policy. One single annual premium is stated to cover all of the provisions, as hereinabove mentioned. However, inasmuch as the policy is "actuarily sound," notwithstanding the premium is not itemized and no basis is furnished for computing the sums allocated to each feature, it necessarily follows that some part of the premium represents an amount sufficient to pay the senior member of a group in full on the death of a junior member of the same group. The contention that the various provisions are

not severable is untenable as far as an examination of specific features to test their validity is concerned. We must consider the so-called "mortality endowment" provision as if it were standing alone, it being the only feature of the proposed policy in dispute.

The Insurance Commissioner argues that such feature is in fact a wagering provision and he contends also that its inclusion in the policy violates Section 43-3-33, R. S. U. 1933. We shall proceed to examine his first contention.

It is conceded by respondents that the insured in a senior position in any division has no insurable interest in the life of an insured who occupies a junior postion. However, they contend such fact is wholly immaterial. To quote from their brief:

"No. 1 policy holder claims no such insurable interest for he has no insurance on any other person. Neither has any other member insurance on No. 1's life."

The last statement is undoubtedly correct, since the policy of no other member matures upon the death of No. 1 policy holder—the holder of the "A" position in a division. But upon the death of Z, for example, some other of the 25 members of his group surviving have a change in position, and the holder of the "A" position is paid the face amount of his policy. Respondents argue that this is merely because a contingency—the happening of which matures the face amount of his policy under the policy provisions—has eventuated; "and it can make no difference whether such contingency is that No. 1 has reached the age of 85 years or that he has paid twenty full premiums or that some person in that division to which No. 1 belongs, dies."

The answer to such contention is that it does make this substantial and controlling difference: That No. 1 who holds the "A" position, as hereinabove indicated, has paid an ascertainable premium in return for the promise of the insurer to pay a stipulated sum upon the death of another person in a group of which he is a member; and that No. 1

has no insurable interest in the life of such junior member of the group. The probabilities are that he may not even be acquainted with the one who dies. The mere fact that such a promise is denominated a "mortality endowment," does not at all obscure the essence of this provision of the contract: A is the beneficiary of insurance on the life of another in which he has no insurable interest. This being so, we are confronted with a salutory rule, the following statement of which we approve: The

"almost universally accepted rule is that a party insuring a human life must have an insurable interest therein if the insurance is effected for his own benefit, or the policy will be void; and he must prove such interest in order to recover, since public policy does not permit one having no insurable interest to procure a policy of insurance upon the life of a human being, and pay the premiums as a speculation, or on a chance of collecting the insurance money." Couch, Cyclopedia of Insurance Law, § 275, pages 769, 770.

It is true in one sense, as asserted by respondent, that the holder of the "A" or No. 1 position in a group does not "insure" the life of any other person. That is, the premium paid is not to assure him against a pecuniary loss occasioned by the death of another. Absent an insurable interest he could suffer no such loss by the death of such other person. To say that under the provision here considered, No. 1 "insures" the life of no one, merely serves to accentuate the gambling nature thereof and to emphasize that it does not constitute legitimate insurance.

In another aspect, also, as pointed out by appellant, the issuance of this type of policy involves at the outset a kind of lottery. When an application therefor is received by the insurer it is given an advantageous or disadvantageous position, depending on the number and automatic allocation of previously received applications. The applicant pays the charge made for the mortality endowment feature for the promise of the insurer to pay a stated sum upon the happening of the contingency provided for, plus the promise to assign the policy to that place of prefer-

ence or disadvantage in a division which is determined by the fortuitous circumstance that in one of the divisions there is or is not a senior position unfilled.

Respondents' contention that the policy assigned to the "A" position has no advantage over any other in a division is not tenable. They suggest that A has just as much chance of dying before B, C, or D as any of the three have of dying before A. But if A's chance of surviving D is only equal to D's chance of surviving him, it follows that A's chance of surviving one of the other three is greater than D's chance of surviving all of the rest. The mathematical probabilities would apply as well to lapsation as to death. Clearly, the more remote the assigned position is from "A" the greater is the probability of paying more premiums than will the holder of the "A" position.

In support of their contention that the "Dual-Pay" policy does not offend against public policy as a wagering contract, respondent refers us to cases dealing with the tontine or semitontine plan of insurance. Under such plan no accumulations or earnings are credited to the policy unless it remains in force for the tontine period of a specified number of years. Thus, those who survive the period and keep their policies in force share in the accumulated fund. Those who die or who permit their policies to lapse during the period do not, neither do their beneficiaries participate in such accumulations. See *Gourley* v. *Northwestern Nat. Life Ins. Co.*, 94 Okl. 46, 220 P. 645; *Uhlman* v. *New York Life Ins. Co.*, 109 N. Y. 421, 17 N. E. 363, 4 Am. St. Rep. 482; *Pierce* v. *Equitable Life Assurance Society*, 145 Mass. 56, 12 N. E. 858, 1 Am. St. Rep. 433; *Equitable Life Assurance Society* v. *Winn*, 137 Ky. 641, 126 S. W. 153, 28 L. R. A., N. S., 558; and *United States Life Ins. Co.* v. *Spinks*, 126 Ky. 405, 103 S. W. 335.

It is obvious that such a plan differs in essentials having a direct bearing on the wagering nature of the contract, from the policy here involved: (1) On issuance of a tontine policy no lottery feature is involved—no preferred position

is accorded any policy holder. (2) The death of no policy holder is necessary in order that a survivor of the period shall share in the accumulated fund. (3) If any advantage accrues to the survivor because of the nonsurvival of another or others, thereby leaving fewer to share therein, such advantage accrues equally to all survivors, not only by virtue of having survived those deceased, but by virtue also of having survived as a policy holder to the end of the stipulated period.

We conclude that the "mortality endowment" provision of the "dual-pay" policy for the reasons herein stated, is a wagering contract. See to the same effect, although dealing with insurance policies which differ in detail from the "Dual-Pay" policy, *Colgrove* v. *Lowe*, 343 Ill. 360, 175 N. E. 569; and *Knott* v. *State ex rel. Guaranty Income Life Ins. Co.*, 136 Fla. 184, 186 So. 788, 121 A. L. R. 715. The Constitution of Utah, Art. VI, § 28 provides:

"The Legislature shall not authorize any game of chance, lottery or gift enterprise under any pretense or for any purpose."

In view of such declaration of public policy and in view of the fact the wagering here involved is on human life, we are compelled to hold that the questioned provision is against public policy and that appellant's action in refusing a permit for its issuance in this state should be upheld. See *State et al.* v. *Russell, Inc.*, 101 Utah 89, 118 P. 2d 679.

In view of the conclusion reached on the first question presented we deem it unnecessary to determine whether the policy violates § 43-3-33, R. S. U. 1933, as amended by Chap. 56, Laws of Utah 1939, now § 43-3-33, U. C. A. 1943, which in effect prohibits discrimination between insurance risks of the same class.

The judgment of the district court is reversed and the cause is remanded with directions to dismiss the complaint. Costs to appellant.

WOLFE, C. J., and LARSON, MOFFAT, and WADE, JJ., concur.