## FREY & SON, INCORPORATED, *v.* CUDAHY PACKING COMPANY.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 200.   Argued March 16, 1921.—Decided April 18, 1921.

1. When the Circuit Court of Appeals reverses a judgment of the District Court in an action at law, and the defeated party brings the case here by waiving his right to new trial and consenting to entry of final judgment against him in the Circuit Court of Appeals, this court must affirm if error necessitating reversal was assigned and relied upon in that court even though the ground of the decision was different and untenable. P. 210. *Thomsen* v. *Cayser*, 243 U. S. 66.

2. An agreement between manufacturer, jobbers and wholesalers to maintain resale prices, need not be formal to violate the Sherman Act, but may be implied from a course of dealing or other circumstances. P. 210. *United States* v. *Schrader's Son, Inc.*, 252 U.S. 85.

3. But the mere facts that a manufacturer indicated a sales plan to wholesalers and jobbers fixing prices below which they were not to sell to retailers, and called this feature very often to their attention, and that most of them did not dissent but coöperated by selling at the prices named, do not suffice to establish an agreement or combination forbidden by the Sherman Act. P. 211.

261 Fed. Rep. 65, affirmed.

ERROR to review a judgment of the Circuit Court of Appeals reversing a judgment obtained by the present plaintiff in error in an action for triple damages under the Sherman Act in the District Court. The facts are stated in the opinion.

*Mr. Horace T. Smith* and *Mr. Charles Markell* for plaintiff in error.

*Mr. Gilbert H. Montague*, with whom *Mr. Thomas Creigh* and *Mr. Joseph W. Goodwin* were on the brief, for defendant in error.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

Alleging the existence of an unlawful contract, combination or conspiracy between the Packing Company, manufacturer of "Old Dutch Cleanser," and various jobbers for the maintenance of resale prices, and relying upon the Sherman Act (c. 647, 26 Stat. 209) as interpreted in *Dr. Miles Medical Co.* v. *Park & Sons Co.*, 220 U. S. 373, Frey & Son, Inc., instituted this action in the District Court of the United States for Maryland to recover threefold damages. Under an elaborate charge the issues were submitted to the jury for determination. Judgment for

$2,139.00 entered (June 22, 1917) upon a verdict for plaintiff was reversed by the Circuit Court of Appeals July 16, 1919 (261 Fed. Rep. 65)—after decision of *United States* v. *Colgate & Co.* (June 2, 1919), 250 U. S. 300, and before *United States* v. *Schrader's Son, Inc.*, 252 U. S. 85. Plaintiff in error reserved its right of review here, waived a new trial and consented to entry of final judgment for the Packing Company. *Thomsen* v. *Cayser*, 243 U. S. 66.

The court below concluded "There was no formal written or oral agreement with jobbers for the maintenance of prices," and that considering the doctrine approved in *United States* v. *Colgate & Co.* the District Court should have directed a verdict for the defendant. Other errors by the trial court were assigned and relied upon. If any of them was well taken we must affirm the final judgment entered after waiver of new trial and upon consent as above shown.

It is unnecessary to repeat what we said in *United States* v. *Colgate & Co.* and *United States* v. *Schrader's Son, Inc.* Apparently the former case was misapprehended. The latter opinion distinctly stated that the essential agreement, combination or conspiracy might be implied from a course of dealing or other circumstances. Having regard to the course of dealing and all the pertinent facts disclosed by the present record, we think whether there existed an unlawful combination or agreement between the manufacturer and jobbers was a question for the jury to decide, and that the Circuit Court of Appeals erred when it held otherwise.

Among other things the trial court charged:

"I can only say to you that if you shall find that the defendant indicated a sales plan to the wholesalers and jobbers, which plan fixed the price below which the wholesalers and jobbers were not to sell to retailers, and you find defendant called this particular feature of this plan

to their attention on very many different occasions, and you find the great majority of them not only expressing no dissent from such plan, but actually coöperating in carrying it out by themselves selling at the prices named, you may reasonably find from such fact that there was an agreement or combination forbidden by the Sherman Anti-Trust Act."

The recited facts, standing alone, (there were other pregnant ones) did not suffice to establish an agreement or combination forbidden by the Sherman Act. This we pointed out in *United States* v. *Colgate & Co.* As given the instruction was erroneous and material.

The judgment below must be

*Affirmed.*

MR. JUSTICE PITNEY, with whom concurred MR. JUSTICE DAY and MR. JUSTICE CLARKE, dissenting:

I am constrained to dissent from the opinion and judgment of the court. The action was brought by plaintiff in error, in part to recover threefold damages under § 7 of the Sherman Anti-Trust Act of July 2, 1890, c. 647, 26 Stat. 209, 210, because of injuries sustained in its business by reason of an alleged combination or agreement for the maintenance of prices made between the Packing Company and various wholesalers and jobbers in its product known as "Old Dutch Cleanser." The declaration contained a second count, based upon alleged discrimination in violation of the Clayton Act of October 15, 1914, c. 323, §§ 2, 4, 38 Stat. 730, 731; but this calls for no special notice. A judgment rendered by the United States District Court upon the verdict of a jury in favor of plaintiff was reversed by the Circuit Court of Appeals (261 Fed. Rep. 65) upon the ground that the acts of defendant and its associates amounted to no more than an announcement in advance that customers were expected

to charge prices fixed by defendant upon penalty of refusal to sell to an offending customer, observance of the request by customers generally, and actual enforcement of the penalty by refusing to sell to such customers as failed to maintain the price; and hence that under the decision of this court in *United States* v. *Colgate & Co.*, 250 U. S. 300, there was no ground of recovery under the Anti-Trust Act.

I agree with the court that the Circuit Court of Appeals misapprehended the effect of our decision in the case cited, and that under rules laid down in *Dr. Miles Medical Co.* v. *Park & Sons Co.*, 220 U. S. 373, 399–400, 408; and *United States* v. *Schrader's Son, Inc.*, 252 U. S. 85, 99, the trial judge was right in submitting the case to the jury.

Notwithstanding its conclusion that the Court of Appeals erred in holding that a verdict ought to have been directed in favor of defendant, the majority holds that the judgment under review here ought to be affirmed, because of supposed error in an instruction given to the jury (a new trial having been waived by plaintiff on consenting to entry of final judgment for the Packing Company by the Circuit Court of Appeals under the practice followed in *Thomsen* v. *Cayser*, 243 U. S. 66, 83).

The instruction to which error is attributed related to the question whether a combination between defendant and the wholesalers and jobbers for the purpose of maintaining resale prices had in fact been shown. After referring to the method pursued by defendant in marketing "Old Dutch Cleanser," and stating that under the law defendant could not be held liable under the first count unless it was a party to a contract or combination or conspiracy to fix and maintain prices; that defendant denied it was a party to any such combination, contract, or conspiracy, and insisted it had merely notified the jobbing trade what prices it thought were the lowest at which jobbers would resell its product at sufficient return

to make it worth their while to push the sale of such product; that plaintiff admitted that, with reference to most of the jobbers at least, there was no written and signed agreement on the subject, and none couched in any formal or express terms; but that defendant from time to time had issued circulars to the trade urging the importance of maintaining "uniform and fair jobbing and retail prices and trading provisions" and stating that "any sales by jobbers at special prices would . . . demoralize prices and disturb the entire business in these products," and that "uniformity and equality, as to terms, delivery and price is essential. It is therefore required of our distributing agents that they fully coöperate with us in this direction, as per terms, conditions and prices laid down in our published General Sales List;" and that upon bills sent to wholesalers by defendant there was stamped a notice that "All your quotations, bids, sales and invoices for Old Dutch Cleanser either to jobbers, semi-jobbers, retailers or consumers, should be at a rate not lower than laid down in our published General Sales List;" the trial judge proceeded, as to the particular question whether in fact there was a combination, to speak thus: "I can only say to you that if you shall find that the defendant indicated a sales plan to the wholesalers and jobbers, which plan fixed the price below which the wholesalers and jobbers were not to sell to retailers, and you find defendant called this particular feature of this plan to their attention on very many different occasions, and you find the great majority of them not only expressing no dissent from such plan, but actually coöperating in carrying it out by themselves selling at the prices named, you may reasonably find from such fact that there was an agreement or combination forbidden by the Sherman Anti-Trust Act."

Passing for the moment the question whether this was legally erroneous, I am unable to find in the record any

basis for attributing error to the trial judge in respect to it, because it was not made the subject of any proper exception. The trial was litigiously contested, defendant having taken no less than 157 exceptions, of which 20 were directed to the charge given to the jury. Among them, however, I can find none that challenges the proposition embodied in the instruction now held to be erroneous, recites either the words or the substance of that instruction, or otherwise fairly identifies it so as to bring it to the attention of the trial judge. Defendant relies upon an exception which reads as follows: "I also respectfully except to so much of your Honor's charge as indicates that an unlawful contract and combination or conspiracy or understanding is shown where it appears that in the absence of an express obligation some dealer, responding to a suggestion from Cudahy Packing Company, may have sold at the prices mentioned in its literature." To which the judge responded: "All a question of fact for the jury. All I can say on such questions is that the jury, when they come into this jury box, I do not suppose, leave their common sense behind."

There is nothing here to show that the attention of the trial judge either was or ought to have been directed to that part of his charge now held to be erroneous. The exception alleged did not even faintly or approximately express the tenor and effect of that instruction or of any other that was given to the jury; much less did it fairly and distinctly raise a question of law upon this or any other point in the charge.

It is elementary that, in order to lay foundation to review by writ of error the proceedings of the courts of the United States in the trial of common-law actions, the questions of law proposed to be reviewed must be raised by specific, precise, direct, and unambiguous objections, so taken as clearly to afford to the trial judge an opportunity for revising his rulings; and that a bill of exceptions not

208.      PITNEY, DAY and CLARKE, JJ., dissenting.

fulfilling this test will furnish no support for an assignment
of error.    To quote from some of the decisions: "One
object of an exception is to call the attention of the circuit
judge to the precise point as to which it is supposed he has
erred, that he may then and there consider it, and give
new and different instructions to the jury, if in his judg-
ment it should be proper to do so." *Beaver* v. *Taylor*, 93
U. S. 46, 55. "While it is the duty of this court to review
the action of subordinate courts, justice to those courts
requires that their alleged errors should be called directly
to their attention, and that their action should not be
reversed upon questions which the astuteness of counsel in
this court has evolved from the record.    It is not the
province of this court to retry these cases *de novo.*" *Rob-
inson & Co.* v. *Belt*, 187 U. S. 41, 50. "It has been too
frequently held to require the extended citation of cases
that an exception of this general character will not cover
specific objections, which in fairness to the court ought to
have been called to its attention, in order that if neces-
sary, it could correct or modify them.    . . .    In such
cases it is the duty of the objecting party to point out
specifically the part of the instructions regarded as erro-
neous." *McDermott* v. *Severe*, 202 U. S. 600, 610. "The
primary and essential function of an exception is to direct
the mind of the trial judge to a single and precise point in
which it is supposed that he has erred in law, so that he
may reconsider it and change his ruling if convinced
of error, and that injustice and mistrials due to inadvert-
ent errors may thus be obviated.    An exception, therefore,
furnishes no basis for reversal upon any ground other than
the one specifically called to the attention of the trial
court." *United States* v. *United States Fidelity & Guar-
anty Co.*, 236 U. S. 512, 529. See, also, *Guerini Stone Co.*
v. *Carlin Construction Co.*, 248 U. S. 334, 348; *Fillippon* v.
*Albion Vein Slate Co.*, 250 U. S. 76, 82.

Not only the trial judge, but the opposing party has

rights that one who objects to the course of the proceedings is bound to respect, if he seeks a review by writ of error.  To permit the result of a trial to be set at naught because of an objection that has no proper relation to any ruling made unless it be taken in a sense entirely variant from the language expressed by objecting counsel, would render the fair and orderly conduct of a trial impossible and place a premium upon ambiguity and even trickery. Upon the present record, it would be most unjust to the plaintiff, as well as to the trial judge, to call upon the latter, wearied as he must have been in the course of such a trial, to recognize in the one hundred and fifty-fourth objection a challenge of the legal accuracy of an instruction that he had expressed in language so very different.

But, were the instruction duly excepted to, I am unable to assent to the view that it was erroneous.  The jury were not told that from the facts recited, if believed, an agreement or combination forbidden by the act of Congress necessarily resulted, but only that from those facts, together with other and undisputed facts that were in evidence, they reasonably might find there was such an agreement or combination.  It is settled beyond controversy that an agreement in order to be a violation of the act need not be expressed, but may be "implied from a course of dealing or other circumstances" (*United States* v. *Schrader's Sons, Inc.,* 252 U. S. 85, 99).  And, while naturally it influences the action of the participants, it of course need not be such as to control them in a legal sense. From the very fact that it is a violation of the law it cannot be legally binding; and it is only as a *de facto* agreement, or understanding, or combination, that the conspiracy in restraint of trade need control the conduct of the participants in order that it may constitute a violation of the act.

Reading the criticized instruction in the light of the other parts of the charge, it amounted to no more than

telling the jury that if defendant had a sales plan that, if, assented to and carried into effect, would constitute a fixing of prices in restraint of interstate trade and commerce, and the particulars of this plan were repeatedly communicated by deferdant to the many wholesalers and jobbers with whom it had relations, and if the great majority of them not only did not express dissent from the plan but actually coöperated in carrying it out by themselves adhering to its details; the jury reasonably might infer that they did mutually give assent to the plan, equivalent to an agreement or combination to pursue it. In short, that upon finding many persons, actuated by a common motive, exchanging communications between themselves respecting a plan of conduct and acting in concert in precise accordance with the plan, the jury might find that they had agreed or combined to act as in fact they did act; that their simultaneous pursuit of an identical programme was not a miraculous coincidence, but was the result of an agreement or combination to act together for a common end.

The opinion states no ground upon which the instruction is held to be erroneous; the elaborate brief submitted in behalf of the Packing Company specifies no criticism upon it; and I am unable to discern adequate reason for condemning it.   It suggested a perfectly natural and legitimate inference that might be drawn by the jury from the facts in evidence; having included in the recital the very same facts and circumstances, indeed, upon which this court now unanimously holds that the case was for the jury.   Concerted action is of the essence of a conspiracy (*Pettibone* v. *United States*, 148 U. S. 197, 203); and it is "hornbook law" that where concerted action is found to exist following an interchange of communication between the actors, it gives ground for a reasonable inference of an agreement to act in concert.   Just as the mechanism of a watch affords evidence of a design, and

hence of a designer; so a systematic course of action, pursued at one and the same time by many persons and affecting their mutual interests, raises a fair inference of an agreement between them to pursue that course of action. Juries in conspiracy cases are instructed to this effect every day, without disapproval; and it seems to me the permitted inference is in accord with common sense and the ordinary rules by which men's motives and secret understandings are judged from their acts.

I find nothing in the *Colgate & Co.* decision to support a criticism of the judge's instruction. There the indictment, under the interpretation adopted by the trial court and necessarily accepted by us, failed to charge the making of any agreement, either express or implied, that imported an obligation to observe specified resale prices. This was the very ground of our decision, as was pointed out in the case of *Schrader's Son, Inc.*, 252 U. S. 99. Here the state of the evidence, as this entire court now holds, required the trial court to submit to the jury the question of fact whether an agreement to observe the specified resale prices was to be inferred from the course of dealing and other circumstances. The trial judge fairly summarized the pertinent facts and circumstances disclosed by the record regarding the course of dealing between the parties, from which the alleged agreement, combination, or conspiracy in restraint or trade might or might not be inferred, and then, in the clause now criticized, submitted to the jury the question of fact whether one should be inferred. I am unable to see in what respect he failed to conform to correct practice and the decisions of this court; or how, if his instruction was erroneous, a trial judge can correctly submit to a jury the question whether, from a course of dealing and other circumstances, an agreement to fix prices in restraint of trade shall be found.

The circumstances from which the trial judge permitted an inference of conspiracy to be drawn seem to me stronger

than those held sufficient by this court in *Thomsen* v. *Cayser*, 243 U. S. 66, 84, where there was no direct proof of the terms of any conference or agreement participated in by the defendants, and the principal evidence consisted of circulars issued and a concerted course of dealing under which certain steamship owners operated their vessels in the trade from New York to South African ports without competing with one another; upon the strength of which the court rejected the suggestion that the circulars and the concerted course of dealing under them were accidental and without premeditation followed by unity in execution. So in *Eastern States Retail Lumber Dealers' Association* v. *United States*, 234 U. S. 600, 607–609, 612, there was no express agreement among the retailers to refrain from dealing with the listed wholesalers, nor any penalty for failing to do so. But the court found, in the systematic and periodical circulation of certain confidential information, commonly called black-lists, intended to guide the action of the recipients and cause them to withhold patronage from the listed concerns, sufficient evidence of a conspiracy in restraint of trade; saying, p. 612: "It is said that in order to show a combination or conspiracy within the Sherman Act some agreement must be shown under which the concerted action is taken. It is elementary, however, that conspiracies are seldom capable of proof by direct testimony and may be inferred from the things actually done, and when in this case by concerted action the names of wholesalers who were reported as having made sales to consumers were periodically reported to the other members of the associations, the conspiracy to accomplish that which was the natural consequence of such action may be readily inferred." Here the character of the communications was different; but as evidence, when taken in connection with the concerted action that followed, they have the same tendency to show a conspiracy.

Authorities easily might be multipled, but it is unnecessary. Convinced that the ruling now made, if adhered to, will seriously hamper the courts of the United States in carrying into effect the prohibition of Congress against combinations in restraint of interstate trade, I respectfully dissent from the opinion and judgment of the court.

Mr. Justice Day and Mr. Justice Clarke concur in this dissent.