## UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION v. TABAS et al.

Circuit Court of Appeals, Third Circuit.
September 26, 1927.

Rehearing Denied November 1, 1927.

No. 3498.

**1. Appeal and error ⚖⇒181—Only questions clearly presented to trial court by objections reviewable on writ of error.**

To lay foundation for review by writ of error, the questions of law proposed to be reviewed must be raised by specific, precise, direct, and unambiguous objections in the trial court.

**2. United States ⚖⇒52½—United States Shipping Board Emergency Fleet Corporation may be sued on its contracts.**

The United States Shipping Board Emergency Fleet Corporation *held* subject to suit on its contracts.

**3. United States ⚖⇒52½—Contract of Emergency Fleet Corporation does not bind United States as joint party.**

A contract executed by the Emergency Fleet Corporation does not bind the United States as a joint party.

**4. United States ⚖⇒65—United States not bound by contract to which its name was typewritten by person unknown.**

The name "United States of America, by United States Shipping Board," typewritten above the signature of the Emergency Fleet Corporation to a contract made by it, *held* not to bind the United States as a party to the contract, in the absence of evidence of any authority to make such writing.

**5. United States ⚖⇒65—United States Shipping Board has no statutory authority to sign name of United States to contract.**

United States Shipping Board has no statutory authority to sign the name of the United States to a contract.

**6. Corporations ⚖⇒306—Corporations are not authorized to sign name of sole stockholder to contract.**

A corporation as such has no authority to sign the name of its stockholder to a contract to bind him as sole or joint obligor.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action at law by Abraham Tabas and others, partners as the Northern Metals Company, against the United States Shipping Board Emergency Fleet Corporation. Judgment for plaintiffs (9 F.[2d] 648), and defendant brings error. Affirmed.

George W. Coles, U. S. Atty., and Paul W. Knox, both of Philadelphia, Pa. (I. V. McPherson; George A. Parker, and George Biddle, all of Washington, D. C., of counsel), for plaintiff in error.

Donald S. Edmonds and Porter, Foulkrod & McCullagh, all of Philadelphia, Pa., for defendants in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Abraham Tabas, Morris Tabas, and Samuel Tabas, copartners trading as the Northern Metals Company, entered into a contract with the United States Shipping Board Emergency Fleet Corporation, defendant, to purchase from it "all underground cable used for the supply of light and power from main substation to the wet basins and to the various ways' substations, approximately 125 net tons," located at Hog Island, Pa. The material was purchased "as is, where is," for "$75.60 per net ton."

When the contract was signed, the plaintiffs paid to defendant $945 in cash, and delivered to it an irrevocable domestic letter of credit for $8,505, the approximate balance of the purchase price.

Plaintiffs at once began to remove the cable. There appears to have been more material than was anticipated by defendant, and on November 29, 1922, defendant notified plaintiffs that they would not be permitted to remove any more cable. Thereupon the plaintiffs brought suit against the defendant for damages for breach of the contract of sale. Plaintiffs contend that there remained underground, when they were notified not to remove any more material, 146.8 tons, and that the market price of the cable was $.0827 per pound and the cost of removing was $2.56 per ton. Plaintiffs brought suit for the net difference between contract price and market price on 146.8 tons.

The jury rendered a verdict for them, and the defendant brought the case here on writ of error.

The assignments may be compressed into the following three propositions upon which the defendant relies for reversal:

(1) The contract is the sole contract of United States as the disclosed principal, and the defendant is not liable thereon.

(2) If not the sole contract of the United States, it was the joint obligation of the United States and the defendant, which cannot be sued without joining the United States.

(3) The evidence is not sufficient to sustain the verdict.

Defendant says that in making and entering into the contract, it was in fact and in law acting only as the agent of the United States, and, notwithstanding its signature to the contract, it is the sole obligation of the United States.

[1] This contention, was not made to the District Court, and it would be unfair to reverse a judge on a point not brought to his attention at the trial. It is elementary that, in order to lay a foundation for review by a writ of error, the questions of law proposed to be reviewed must be raised by specific, precise, direct, and unambiguous objections, so taken as clearly to afford the trial judge an opportunity for revising his rulings, and that a bill of exceptions not fulfilling this test will not support an assignment of error. Farrar v. Churchill, 135 U. S. 609, 10 S. Ct. 771, 34 L. Ed. 246; Behn, Meyer & Co. v. Campbell, 205 U. S. 403, 27 S. Ct. 502, 51 L. Ed. 857; Briscoe v. Rudolph et al., 221 U. S. 547, 31 S. Ct. 679, 55 L. Ed. 848; Wood v. Wilbert, 226 U. S. 384, 33 S. Ct. 125, 57 L. Ed. 264; Frey & Son v. Cudahy Packing Co., 256 U. S. 208, 41 S. Ct. 451, 65 L. Ed. 892; In re Federal Contracting Co. (C. C. A.) 212 F. 693; Connell Bros. Co. v. Diederichsen & Co. (C. C. A.) 213 F. 737.

[2] Furthermore, we do not think that this view is tenable on the merits. The defendant has cited a number of cases in support of the proposition that, when an official of the government, acting within the scope of his authority, enters into a contract for the United States, he is not personally bound, but the United States is. There is no question about this statement as a correct proposition of law. When such an officer of the government as the Postmaster General, for example, in his official capacity, enters into a contract for the performance of governmental work, the interests of the government are so directly involved as to make the United States a necessary party and in effect the real party, although not named in the contract. Hodgson v. Dexter, 5 U. S. (1 Cranch) 345, 2 L. Ed. 130; Parks v. Ross, 52 U. S. (11 How.) 362, 13 L. Ed. 730; Sheets v. Seldon, 69 U. S. (2 Wall.) 177, 17 L. Ed. 822; Wells v. Roper, 246 U. S. 335, 38 S. Ct. 317, 62 L. Ed. 755. But the defendant here occupies a different position. The act under which it was created was a war measure. The act contemplated a corporation in which private persons might be stockholders, and which was to be organized like any business corporation under the laws of the District of Columbia. The meaning of incorporation is that the corporate entity is a person and as such is subject to the general rules of law. While the United States owns all the stock of the defendant corporation, it is controlled and managed by its own officers, who are responsible directly to it, and must be regarded as a separate entity, which may enter into contracts and sue and be sued. Manufacturers' Land & Improvement Co. v. United States Shipping Board Emergency Fleet Corporation et al. (C. C. A.) 284 F. 231; United States v. Strang et al., 254 U. S. 491, 41 S. Ct. 165, 65 L. Ed. 368; Sloan Shipyards v. U. S. Fleet Corporation, 258 U. S. 549, 42 S. Ct. 386, 66 L. Ed. 762. The fact that the defendant is an instrumentality of the sovereign does not, on the one hand, exempt it from suit, nor, on the other, subject the sovereign to suit without its express consent.

[3-5] The defendant says that, if the contract is not the sole contract of the United States, it is the joint contract of the United States and the defendant Fleet Corporation. The contract was signed by the Fleet Corporation on its own letter head, in its own office, and the only connection of the United States is its signature in typewriting by "United States Shipping Board." There is no evidence of joint liability other than the contract itself. The fact that the United States holds the stock of the Shipping Board does not confer upon it the authority to bind the United States by contract, even if the contract had been properly executed by the Shipping Board as the agent of the United States. As Judge Thompson said: "The contract in suit was not on its face, nor is it shown in fact to have been, on behalf of the United States." The contract was not executed as corporate contracts should be executed. Some person wrote in the name of the United States in typewriting as a party to the contract, "United States of America, by United States Shipping Board." It is not known who that person is. What his authority in the Shipping Board was and what authority the Shipping Board had to bind the United States of America by contract either jointly or solely are not disclosed. In conferring upon the Shipping Board authority to dis-

pose of shipyards as a whole or in parts, Congress did not thereby create the Shipping Board the agent of the United States with power to bind it as sovereign by contract. In other words, the Shipping Board could enter into contracts binding itself as a corporate entity, but this did not confer upon it power to make contracts binding its stockholder as sovereign. The Shipping Board was not shown to be an agent vested with power to bind the United States of America as principal.

Counsel says: "If the Fleet Corporation had authority of the United States to sell its cable, then it was authorized to execute a contract for such sale." That is true, but the contract must be that of the Fleet Corporation as a corporate entity. This corporation was created to act as a corporate entity in the management and disposition of such property as was given to it.

Counsel further says: "The contract of an agent within the scope of his authority, is the contract of his principal, and an agent, having the authority to sell the property of the principal, has authority to sign his principal's name to such contract." This may be true, but it is not applicable to this case. The relation between the United States and the Shipping Board is not that of principal and agent, but that of a stockholder and corporation. "There is no authority," as Judge Thompson said, "in the statute books upon which the United States may be bound by the action of the Shipping Board." And, further, "there was no evidence, nor does anything appear upon the paper, to show that the Shipping Board executed the contract. Its name, placed upon the paper in typewriting, does not constitute execution in the manner in which corporations execute contracts. The execution on behalf of the Emergency Fleet Corporation by J. T. Eason, as sales manager, was not denied."

[6] A corporation, as such, has no authority to sign the name of its stockholder to a contract and bind him as sole or joint obligor. We think that the contention that the contract was either the sole or joint contract of the United States is untenable.

The third proposition on which the defendant relies is that "the evidence is not sufficient to sustain the verdict.

The contract contained the following provision as to the amount of material sold: "It is understood that you agree to purchase, and we agree to sell: All underground cable used for the supply of light and power from main substation to the wet basins and to the various ways' substations, approximately 125 net tons." The defendant contends that there was no evidence to sustain the verdict as to the amount of cable remaining in the shipyard between the points mentioned in the contract nor as to the market price of the cable. When the plaintiff had removed a part of the cable between the points mentioned in the contract, the defendant breached the contract by preventing the removal of the balance. The measure of damages is the difference between the contract price and the market price on the amount not removed, less the cost of removing. Mindlin et al. v. O'Boyle et al., 278 Pa. 212, 122 A. 294; Frank Pure Food Co. v. Dodson et al., 281 Pa. 126, 126 A. 243; Roomberg et al. v. Borden et al. (C. C. A.) 292 F. 321. There was evidence tending to show that there was no market for the cable as such, because electric companies are unwilling to use secondhand cable in new installations, but there was evidence from competent witnesses that there was a market of $8.27 per 100 pounds f. o. b. cars at Hog Island for the material out of which the cable was made, and that the cost of removing it was $2.56 per ton. There was also testimony as to the amount of cable not removed and embraced in the contract at the time of the breach, and on which the plaintiffs would have received a profit if they had been allowed to remove it. The credibility of the witnesses and the weight of their testimony were questions for the jury. This testimony as to the amount of the material not removed at the time of the breach and the amount of damages to which the plaintiffs are entitled were questions for the jury, and the evidence is sufficient to sustain the verdict which settles the facts.

We do not find that error was committed at the trial, and the judgment is affirmed.