**PLEATMASTER, Inc., and Bert P. Solomon, Appellants,**

v.

**CONSOLIDATED TRIMMING CORPORATION, Appellee.**

No. 13323.

United States Court of Appeals Sixth Circuit.

April 1, 1958.

John W. Babcock, Detroit, Mich., Clarence B. Zewadski, Detroit, Mich., on brief, for appellant.

William E. Friedman, Detroit, Mich., Harness, Dickey & Pierce, Detroit, Mich., on brief, for appellee.

Before SIMONS, Chief Judge, MARTIN, Circuit Judge, and JONES, District Judge.

JONES, District Judge.

Appellee brought an action in the District Court to have appellants' patent declared invalid and not infringed by appellee. Appellants' answer contained a general denial and the usual defenses, but also included a counterclaim for infringement, injunction and accounting in one count, and a second count alleged a breach by appellee of a license agreement between the parties respecting the patent made the subject of the declaratory action.

At the trial, upon motion of the appellee, the District Court dismissed the second count of appellants' counterclaim which alleged the breach of a valid license agreement entered into between the parties on October 28, 1953 (Exhibit 3), and evidentially supported by Exhibits 6 and 11. Upon entry of the order of dismissal by the District Court the trial was halted and this appeal taken.

Thus, the single question presented here is whether these parties entered into a valid contract. Appellants urge that the District Court erroneously dismissed count two of their counterclaim and contend that a valid license agreement was fully and completely executed by both parties, as evidenced by Exhibit 3, and that evidential support to such a valid agreement may be found in Exhibits 6 and 11; that all of the essentials of a patent license agreement are present in Exhibit 3; that there was adequate consideration to support the contract in the release from liability for infringement on the one side and an obligation to pay for the release in royalties on the other side.[1]

Appellee asserts that the instrument under consideration is no more than a memorandum confirming an oral agreement, requiring proof as to what the parties agreed to, or that it is incomplete as the agreement of the parties until a written license agreement has been prepared and executed, relying upon the law of New York State where the instrument was executed or the agreement was entered into.

A New York case, Friedman & Co. v. Newman, 1931, 255 N.Y. 340, 174 N.E. 703, 73 A.L.R. 95 (Lehman, J., on the opinion; Cardozo, C. J., concurring) relied upon by appellee has to do with a stock broker's confirmation of a purchase order for a customer. It is correctly called, and was a memorandum of an oral agreement. It was not a completed contract binding upon the parties. The facts in that case are as follow:

Plaintiff corporation was a dealer in bank and insurance company stocks. As a result of telephone negotiations, plaintiff agreed to sell to defendant ten shares of Chase National Bank stock. Then, in accordance with practice plaintiff prepared a "Confirmation of Sale," on plaintiff's business stationery, signed by plaintiff, and addressed to defendant, and thereafter signed by defendant, reading:

"We beg to confirm our sale to you today of 10 shares Chase National Bank at 1060—10600
  "Accepted. L. Newman (signed)
  "Delivery
  "Bank of U. S.
    "Pitkin Avenue
  "Yours truly,
      "Donald Friedman & Co., Inc.
      "(Signed) by B. Willung."

Plaintiff refused to deliver the stock under the terms in the confirmation, claiming the agreed price was $1,160 rather than $1,060, which latter figure was inserted by mistake. Defendant denied the mistake and insisted upon performance of the contract in accordance with the terms contained in the confirmation.

Both parties sued for damages resulting from the failure of the other party to perform the agreement. The actions were consolidated. Neither party urged that this writing constituted a contract between the parties, but only that it was a memorandum sufficient to satisfy the statute of frauds.

The rest of the case concerns whether the parol evidence rule prevents the modification of a written memorandum of an oral contract, where the writing is inconsistent with the oral agreement, and whether such memorandum, if proved inconsistent with the oral contract, is sufficient memorandum to overcome the bar of the statute of frauds.

The court held that if a written memorandum of an oral contract does not reflect accurately the oral agreement, such memorandum does not satisfy the statute of frauds.

We are unable to find any case on the facts like, or analogous to the agreement here under consideration either in the New York reports or elsewhere that would destroy or impair the binding effect of the instrument under consideration here.

1. Since the only evidence relied upon consists of Exhibits 3, 6 and 11, they are attached as an appendix for convenience.

The mutual obligations expressed specifically in the present instrument are something more and different in legal effect than the broker's confirmation of a purchase order for a customer. In the case of the broker's confirmation it was a memorandum, and so regarded by the parties and in the market place. Here a completed contract was executed by the acceptance of a proposal or offer which became binding upon both parties.

All the essentials of a patent license agreement are present in Exhibit 3; there was adequate consideration to support it in the release from liability for infringement in the past and permission to manufacture the patented product in the future without liability in damages; but with an obligation to pay royalties for such release of past liability and provision for future use. Exhibits 3, 6 and 11 express and evidence what seems to us to represent a meeting of the minds, a mutuality of obligations, which is another way of finding adequate consideration.

Whatever was originally agreed to was merged into the instrument duly executed by acceptance of the offer. Every agreement between parties evidenced by a writing setting forth specific and mutual obligations, in a very real sense, could be called a confirmation of some earlier oral agreement.

Upon another ground the appellee seeks to sustain the ruling below; i. e., that the agreement, Exhibit 3, was not signed by the hand of appellant Pleatmaster, Inc.'s agent or attorney Cullen, although the name of appellant Pleatmaster, Inc. was typewritten on the offer, as was Cullen's; and Cullen's intention thereby to bind Pleatmaster, Inc. was neither impeached nor attacked. But that apparent lack cannot be relied upon as an infirmity by which appellee can escape the binding effect of its acceptance; no more than the appellants could withdraw from the engagement for that reason, if they undertook to do so. Once the

appellee had accepted the offer the contract was binding on both.[2]

Counsel for appellee's statement in argument of what attorneys for the parties were to do or prepare was based wholly upon the language of Exhibit 6; but there is no evidence in the record to support such claim and the court does not take judicial notice that greater formalities generally are required for valid patent license agreements. Appellee offered no evidence to countervail the legal significance of these instruments but appeared to be content to have rested entirely on the lack of validity evidenced on the face of the papers. The instrument had specific and essential provisions adequate for a completed license agreement. De Forest Radio Telephone and Telegraph Company v. United States, 273 U. S. 236, 241, 47 S.Ct. 366, 71 L.Ed. 625.

The contract which we think was entered into by Exhibit 3 was further ratified, perhaps unnecessarily (probably out of an abundance of precaution) by the appellants' Exhibit 6; and the contract's existence was given recognition by Exhibit 11 in which the appellee acknowledged its obligation to build up royalties for the appellants.

In the foregoing view we take of the matter, the District Court's order dismissing the second count of appellants' counterclaim was erroneously entered, and the judgment must be reversed and this phase of the case remanded for further proceedings in accordance with this opinion.

### APPENDIX

(Defendants' Exhibit 3.)

October 28th, 1953.

Consolidated Trimming Corp.
27 West 23rd Street
New York, N. Y.

Att. Mr. Joseph Bernhard, Pres.

Gentlemen:

This will confirm our conversation of recent date in which we have agreed upon

---

2. See Brooklyn City R. Co. v. City of New York, 139 Misc. 691, 248 N.Y.S. 196; Tabas v. Emergency Fleet Corp., D.C., 9 F.2d 648, affirmed United States Shipping Board Emergency Fleet Corp. v. Tabas, 3 Cir., 22 F.2d 398.

the following terms for license on your Bestpleat Hooks:

1: The royalty will be ¼¢ per hook, payable monthly.

2: A release for past manufacture is given for the sum of $2500 for the period ending September 30th, 1953.

3: License is non-cancellable by Pleatmaster.

4: License is cancellable by Consolidated only if the patent of the license is declared invalid in a final adjudication.

The patent of the license is No. 2558467 of June 26th, 1951.

Very truly yours,

Pleatmaster, Inc.

D. G. Cullen
Attorney

(In writing)

Accepted Consolidated Trimming Corp
Joseph Bernhard
Pres.

---

(Defendants' Exhibit 6.)

Nov. 4, 1953.

Consolidated Trimming Corp.
of New York
27 West 23rd Street
New York, New York

Attention: Mr Joseph Bernhard,
President

Gentlemen:

This will ratify the license agreement between your company and ours dated October 28, 1953 and signed on our behalf by our attorney, Daniel G. Cullen. The license covers your Best Pleat Hooks and is based on our patent No. 2,558,467 of June 26, 1951.

The terms of the license are as follows:

1. The royalty will be ¼¢ per hook, payable monthly.

2. A release for past manufacture is given for the sum of $2,500.00 for the period ending September 30th, 1953.

3. License is non-cancellable by Pleatmaster.

4. License is cancellable by Consolidated only if the patent of the license is declared invalid in a final adjudication.

5. License is effective October 1, 1953.

We would also like to have you mark the patent number on your packages of pleaters and would appreciate your advising us that this will be done hereafter.

We understand that formal license agreements may be drafted in the near future by your attorney and submitted to us for consideration. Meanwhile, this letter should suffice as the agreement between us.

Yours very truly,

Pleatmaster, Inc.

By: Dr. Bert P. Solomon, Pres.

BPS:ms

cc: Daniel G. Cullen

---

(Defendants' Exhibit 11.)

Dr. B. P. Solomon
Pleatmaster, Inc.
18645 James Couzens Highway
Detroit 35, Michigan

Dear Dr. Solomon:

This past Fall, we ran Ads on Bestpleat in Good Housekeeping, Better Homes & Gardens, Country Gentlemen, Today's Woman, House Beautiful, Living for Young Homemakers, Woman's Day and American Home. These Ads were run in either one or more of the months of October, November and December. Our plans for the Spring will be to start Ads in February in at least these magazines and in all probability in more, since our budget is double what it was for the Fall season.

As you can see, we are really trying to build up a good royalty for you.

Kindest regards.

Sincerely yours,
Consolidated Trimming Corp.

(Signed) Eli Freyberg

Eli Freyberg
Treasurer

EF:ew