**Frank GUZOWSKI; Lorraine Guzowski; Raymond Guzowski; and Donald Guzowski, Plaintiffs–Appellants,**

**v.**

**Bernard HARTMAN; Herbert Tyner; Emanuel J. Sears; James Karoub; Detroit Racing Association, Inc.; and Hazel Park Racing Association, Inc., Defendants–Appellees.**

No. 90–1737.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 13, 1991.

Decided July 10, 1992.

Rehearing Denied Aug. 12, 1992.

---

P. David Palmiere (argued and briefed), Hardig & McConnell, Bloomfield Hills, Mich., for plaintiffs-appellants.

J. Leonard Hyman, Nazli G. Sater (argued), Hyman and Lippitt, Sharon Mullin Fox (briefed), Carson, Fischer & Potts, Birmingham, Mich., for defendants-appellees.

Before: KEITH and MARTIN, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

KRUPANSKY, Senior Circuit Judge.

The plaintiffs-appellants Frank Guzowski, Lorraine Guzowski, Raymond Guzowski, and Donald Guzowski ("Guzowskis") have appealed the order and judgment of the district court dismissing their complaint for failure to state a claim. The Guzowskis, who owned and operated a family partnership that engaged in breeding, training, and racing thoroughbred horses, brought this complaint against the Hazel Park Racing Association, Inc., which owns and operates the Hazel Park Race Course, Detroit Racing Association, Inc., and its subsidiary the Detroit Race Course. Both racing corporations are owned by the defendants-appellees Bernard Hartman and Herbert Tyner. The defendant-appellee Emanuel J. Sears was racing secretary at both tracks.[1]

This is the third appellate review of this controversy. The Guzowskis filed the initial complaint in this action in 1981. It charged violations of the Sherman Act, 15 U.S.C. sections 1 and 2, 42 U.S.C. section 1983, and 42 U.S.C. section 1985(3). It also asserted several pendent state law causes of action. The first complaint was dismissed by the district court (Churchill, J.) for failure to state a claim. This court affirmed the district court's dismissal of the only count appealed, the Sherman Act section 1 refusal to deal claim. *Guzowski v. Hartman*, 723 F.2d 909 (6th Cir.1983) (per curiam).

The Guzowskis filed a second complaint in 1984, which is currently under review. The allegations in the second complaint, like the allegations of the first complaint, are anchored in the same conspiracy that the Guzowskis assert was calculated to bar them from racing thoroughbred horses in Michigan by refusing to permit their horses onto the Michigan tracks, denying their horses stall space, and publishing false statements about Frank Guzowski. The second complaint was essentially the same as the first complaint and alleged violations of the Sherman Act, 15 U.S.C. sections 1 and 2, and the Clayton Act, 15 U.S.C. sections 14 and 25, in Counts II and III. Counts IV and V alleged violations of 42 U.S.C. sections 1983 and 1985(3). Count X alleged a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. sections 1961 to 1968, together with four counts of pendent state law violations.

The district court (La Plata, J.) dismissed the entire second complaint by applying the

---

1. Although James Karoub is a named defendant, the complaint does not allege his specific role nor his wrongful acts.

doctrine of res judicata. A panel of this court reversed that dismissal, concluding that this court's affirmance of the trial court's dismissal of the first complaint was without prejudice, thereby permitting the Guzowskis to refile the Sherman Act section 1 action. This court also explained that the RICO recovery, if any existed, was embraced within the same general refusal to deal theory arising under the Sherman Act section 1 cause of action and, accordingly, remained as a viable action. Finally, this court stated that the 1981 causes of action that were not appealed in the first appeal, the Sherman Act section 2 cause of action and the 42 U.S.C. section 1983 and 1983(5) causes of action, were to be evaluated under principles of issue preclusion, i.e., collateral estoppel, rather than claim preclusion, i.e., res judicata. *Guzowski v. Hartman*, 849 F.2d 252, 255–56 (6th Cir. 1988) (*Guzowski II*).

On remand, the district court addressed the sufficiency of the Sherman Act sections 1 and 2, the Clayton Act, and the RICO causes of action on their individual merits and dismissed them for failure to state a claim. The district court determined that the sections 1983 and 1983(5) causes of action were barred by issue preclusion. The Guzowskis have appealed the dismissal of all the federal causes of actions except those invoking the Clayton Act.

The charged trial court error in the second dismissal of the second complaint is reviewed by this court de novo pursuant to Fed.R.Civ.P. 12(b)(6). *Dana Corp. v. Blue Cross & Blue Shield*, 900 F.2d 882, 885 (6th Cir.1990); *Dugan v. Brooks*, 818 F.2d 513, 516 (6th Cir.1987). In considering the sufficiency of the complaint, this court must construe the complaint in the light most favorable to the Guzowskis, accept all of the Guzowskis' factual allegations as true, and affirm the dismissal only if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Dana Corp.*, 900 F.2d at 885.

Section 1 of the Sherman Act provides, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal...." 15 U.S.C. § 1 (Supp.1991). As the statutory language indicates, the threshold requirement to proving a section 1 refusal to deal cause of action is a contract, agreement, or conspiracy to restrain trade. *Davis–Watkins Co. v. Service Merchandise*, 686 F.2d 1190, 1196 (6th Cir.1982). Section 1 does not reach conduct that is "wholly unilateral" and does not reach agreements between the officers of a corporation and its employees. The thrust of a conspiracy to restrain trade within the factual parameters of this case is concisely explained by the Supreme Court in *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984):

> The distinction between unilateral and concerted conduct is necessary for a proper understanding of the terms 'contract, combination ... or conspiracy' in § 1. Nothing in the literal meaning of those terms excludes coordinated conduct among officers or employees of the *same* company. But it is perfectly plain that an internal 'agreement' to implement a single, unitary firm's policies does not raise the antitrust dangers that § 1 was designed to police. The officers of a single firm are not separate economic interests, so agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals.... For these reasons, officers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy.

> There is also a general agreement that § 1 is not violated by the internally coordinated conduct of a corporation and one of its unincorporated divisions. Although this Court has not previously addressed the question, there can be little doubt that the operations of a corporate enterprise organized into divisions must be judged as the conduct of a single actor. The existence of an unincorporat-

ed division reflects no more than a firm's decision to adopt an organizational division of labor. A division within a corporate structure pursues the common interests of the whole rather than interests separate from those of the corporation itself; a business enterprise establishes divisions to further its own interests in the most efficient manner. Because coordination between a corporation and its division does not represent a sudden joining of two independent sources of economic power previously pursuing separate interests, it is not an activity that warrants § 1 scrutiny.

. . . .

For similar reasons, the coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act. A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousness, but one. They are not unlike a multiple team of horses driving a vehicle under the control of a single driver. With or without a formal "agreement," the subsidiary acts for the benefit of the parent, its sole shareholder. If a parent and a wholly owned subsidiary do

"agree" to a course of action, there is no sudden joining of economic resources that had previously served different interest, and there is no justification for a § 1 scrutiny.

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. at 769–771, 104 S.Ct. at 2740–42, 81 L.Ed.2d 628; *see also Directory Sales Mgmt. v. Ohio Bell Telephone Co.*, 833 F.2d 606 (6th Cir.1987).

In the instant case, the district court noted that although the two racetracks are owned by separate corporations, the shareholders of the corporations, Hartman and Tyner, are identical. The corporations were, accordingly, a single economic unit serving a common interest and could not conspire with each other. *See American Tobacco Co. v. United States*, 328 U.S. 781, 810, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946). The common economic identity of the two corporations is reinforced by the contained size of the corporations and their limited shareholders. Thus, the racetracks could not, for purposes of a Sherman Act section 1 cause of action, combine, contract or conspire to restrain trade. Likewise, under *Copperweld Corp.*, the officers of the corporations could not combine, contract, or conspire with the corporation's own employees of its related entities. *Copperweld Corp.*, 467 U.S. at 769–70, 104 S.Ct. at 2740–41.[2]

---

**2.** A review of *United States v. Colgate & Co.*, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919), and its progeny, including *Frey & Son, Inc. v. Cudahy Packing Co.*, 256 U.S. 208, 41 S.Ct. 451, 65 L.Ed. 892 (1921); *Federal Trade Commission v. Beech–Nut Packing Co.*, 257 U.S. 441, 42 S.Ct. 150, 66 L.Ed. 307 (1922); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024 (1944), and, ultimately, *United States v. Parke, Davis and Co.*, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960), reflects that the Supreme Court in *Colgate* directed "that a manufacturer is not guilty of a combination or conspiracy if he merely 'indicates his wishes concerning prices and declines further dealings with all who fail to observe them . . .'; however, there is unlawful combination where a manufacturer 'enters into agreements—whether express or implied from a course of dealing or other circumstances—with all customers . . . which undertake to bind them to observe fixed resale prices.'" *Parke, Davis*, 362 U.S. at 39, 80 S.Ct. at 509 (quoting *United States v. Schrader's Son, Inc.*, 252 U.S. 85, 99, 40 S.Ct. 251, 253, 64

L.Ed. 471 (1920)). The court went on to conclude in *Parke, Davis* that "if a manufacturer is unwilling to rely on individual self-interest to bring about general voluntary acquiescence which has the collateral effect of eliminating price competition, and takes affirmative action to achieve uniform adherence by inducing each customer to adhere to avoid such price competition, the customers' acquiescence is not then a matter of individual free choice prompted alone by the desirability of the product. . . . The manufacturer is thus the organizer of a price-maintenance combination or conspiracy in violation of the Sherman Act." *Parke, Davis*, 362 U.S. at 47, 80 S.Ct. at 513.

According the plaintiff's complaint the most generous interpretation, it simply fails to plead, beyond broad conclusory generalities, a cause of action as defined in *Parke, Davis*. It discloses no factual basis or circumstances that would invoke the precedent enunciated in *Colgate* and its progeny, including *Parke, Davis*.

The factual allegations of the complaint disclose no combination or conspiracy between

As noted earlier, this court determined in *Guzowski II* that the RICO cause of action was not precluded because the underlying theory arose out of the same cause of action that had been previously appealed to this court from the dismissal of the first 1981 complaint, that is, the refusal to deal section 1 Sherman Act cause of action. *Guzowski II*, 849 F.2d at 255–56. The district court dismissed the 1984 RICO cause of action, reasoning that the RICO predicate act, the two acts of racketeering activity essential to proving a pattern of racketeering activity pursuant to 18 U.S.C. section 1961(5), was the Sherman Act section 1 conspiracy, which the district court had already determined did not state a claim.

However, the Guzowskis' 1984 RICO count had not, as the district court had assumed in dismissing the RICO count, alleged the antitrust conspiracy as the predicate act. Rather, the Guzowskis had enumerated twenty-two alleged acts of the corporate defendants, acting through their servants, agents, and employees, that essentially "fixed" horse races. These allegations, if true, would have satisfied the predicate acts requirement of RICO, since many of those acts, such as influencing jockeys to "throw" races, would be punishable under state law by imprisonment for more than one year, Michigan Compiled Laws Annotated § 431.85 (West Supp. 1991), and would also have violated federal law, 18 U.S.C. §§ 1084 & 1955 (1984), thus satisfying the definition of racketeering activity under 18 U.S.C. section 1961(1).[3]

The Guzowskis did not specify with particularity the RICO section upon which they relied to support their causes of action. Since they alleged that the corporate defendants engaged in racketeering activity, the RICO count was presumably initi-
ated pursuant to section 1962(b), which provides, "It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b) (1984). However, the Guzowskis have not alleged the existence of any enterprise, much less the identity of an enterprise cognizable under RICO, identified as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (1984). Since the identity of the enterprise cannot be necessarily or even reasonably inferred from the allegations, and since the identity of the enterprise is left to speculation, the RICO count has failed to state a claim.

The RICO cause of action also fails to state a claim if construed pursuant to 18 U.S.C. section 1962(c). Section 1962(c) states that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises' affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c) (1984). Because the statutory language requires that the RICO "person" be "employed by or associated with any enterprise," the RICO "person" generally must be distinct from the "enterprise." *See, e.g., Landry v. Air Line Pilots Ass'n International AFL–CIO*, 901 F.2d 404, 425 (5th Cir.1990); *Schreiber Distributing*, 806 F.2d at 1396; *Bennett v. United States Trust Co.*, 770 F.2d 308, 315

owners, trainers, breeders, jockeys, and the owners of the racetracks, their employees, agents, or representatives that would constitute a section 1 Sherman Act violation. In sum, the pronouncements of *Colgate* and *Parke, Davis* are inapplicable to a resolution of the instant appeal, and the plaintiffs' reliance upon those cases as precedent is misconceived.

3. Section 1961(1) defines racketeering activity to include any act or threat involving, inter alia,
gambling, "which is chargeable under State law and punishable by imprisonment for over a year." 18 U.S.C. § 1961(1)(A) (Supp.1991). It also includes any act indictable under, inter alia, 18 U.S.C. section 1084, which relates to the transmission of gambling information, and 18 U.S.C. section 1955, which prohibits illegal gambling businesses. 18 U.S.C. § 1961(1)(B) (Supp. 1991).

(2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). Again, the Guzowskis have failed to properly plead and/or identify any enterprise, much less specify the existence of an "enterprise" separate and distinct from the corporate RICO "persons." Finally, because the RICO count lacks any allegation that would conjoin the named noncorporate defendants with the purported acts, this court cannot infer that the individual defendants are either the RICO "persons" or "enterprise." *United States v. Yonan,* 800 F.2d 164, 168 (7th Cir.), *cert. denied,* 479 U.S. 1055, 107 S.Ct. 930, 93 L.Ed.2d 981 (1986) (complaint must allege some relationship between defendant and business of enterprise to satisfy association/employment requirement of section 1962(c)).

■ Finally, the Guzowskis' Sherman Act section 2 monopoly, section 1983, and 1983(5) causes of action that had been joined in the 1981 complaint were dismissed by the district court for failure to state a claim and were not appealed. The district court's decision on remand to address the merits of the Sherman Act section 2 cause of action is understandable and the district court's reasoning on the merits is unassailable.[4] However, the Sherman Act section 2 cause of action is more appropriately evaluated under the doctrine of issue preclusion. As this court noted in *Guzowski II,* while a dismissal for failure to state a claim is a judgment on the merits, such a dismissal only determines the legal sufficiency of the complaint in respect to the facts alleged. *Guzowski II,* 849 F.2d at 256. Thus, the Guzowskis were not precluded from realleging and relitigating the facts in order to support the legal sufficiency of the causes of action joined in the second complaint, which had been filed in 1984. However, under issue preclusion, the Guzowskis were barred from relitigating the same theories of recovery, that is, the identical issues, that had been joined in the first complaint and/or that could have been joined in the 1981 complaint which was dismissed by the district court and never appealed. *Guzowski II,* 849 F.2d at 256.

In the 1981 complaint, the Guzowskis alleged that the defendants monopolized or attempted to monopolize the racetrack industry in Michigan. Judge Churchill dismissed the count after deciding that the state's pervasive regulation of the racetracks imbued the individual defendants with antitrust immunity under the state action doctrine. *See California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980); *City of Lafayette, La. v. Louisiana Power & Light Co.,* 435 U.S. 389, 410, 98 S.Ct. 1123, 1135, 55 L.Ed.2d 364 (1978). After dismissing this count, Judge Churchill accorded the Guzowskis the opportunity to amend their complaint to plead an antitrust cause of action that had as its predicate the allocation of stall space, an activity that was not clearly exempt from antitrust liability. Aside from recharacterizing the antitrust counts, the Guzowskis filed an amended complaint that joined identical antitrust issues, which had been previously dismissed for failure to state a claim.

In the instant complaint, the section 2 monopoly cause of action is again premised on the defendants' misuse of a state-grant-

---

**4.** As the district court correctly reasoned, the Sherman Act section 2 claim failed as a matter of law. The Guzowskis had not alleged, nor can it be reasonably inferred from the facts, that they had been in competition with the racetracks. Since the Guzowskis were not rivals nor potential rivals to the enterprise of owning and operating a racetrack, the racetracks here in controversy could not have abused their monopoly power from entering or operating a racetrack in restraint of trade. *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966); *Byars v. Bluff City News Co., Inc.,* 609 F.2d 843, 853 (6th Cir.1979).

Moreover, since the defendant racetracks had not engaged in the enterprise of breeding, training, and racing their own horses, the failure of the tracks to afford the Guzowskis equal access to the tracks through the allocation of stall space did not constitute a Sherman Act section 2 claim. *Byars,* 609 F.2d at 856–58. Even if the racetracks unfairly excluded the Guzowskis from such "essential facilities," such exclusion would not have maintained or enhanced the racetracks' market position, which is a legal prerequisite to a section 2 claim.

ed monopoly, that is, that the defendants had combined to use their monopoly power over stall space to control horses that would be permitted to race at the Michigan tracks. The Guzowskis have pursued this same theory of recovery supported by the same operative facts on at least three occasions. Since the Guzowskis had not appealed Judge Churchill's decision disposing of the section 2 monopoly issue, they are now barred from relitigating it.

Similarly, the facts alleged in the 1984 complaint to support the section 1983 and section 1983(5) causes of action do not differ from the facts alleged and dismissed in the 1981 complaint. In the 1981 complaint, the Guzowskis had asserted that the state extensively regulated the horse racing industry and, by acting through the racing commissioner, controlled all pari-mutuel wagering on horse racing in Michigan. In the 1984 complaint, the Guzowskis again have alleged that the state has regulated the horse racing industry and that the racing commissioner, whose position was created by state law, was charged with the duty, under state law, of insuring that the regulations and rules of Michigan racing law were followed.[5]

Judge Churchill, in dismissing the 42 U.S.C. section 1983 cause of action in the 1981 complaint, correctly determined that the state's regulation of the horse racing industry did not include the allocation of stall space and that the state's regulation of horse racing in Michigan and its derivation of tax revenues from the racetracks did not support a "close nexus" nor "symbiotic relationship" between the state and the racetracks so that the actions of the racetracks could be fairly treated as the actions of the state. *See Jackson v. Metro-*

*politan Edison Co.,*419 U.S. 345, 350–51, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); *Moose Lodge No. 1107 v. Irvis,* 407 U.S. 163, 173–77, 92 S.Ct. 1965, 1971–73, 32 L.Ed.2d 627 (1972); *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 723–26, 81 S.Ct. 856, 861–62, 6 L.Ed.2d 45 (1961). Judge Churchill necessarily considered the role and authority of the racing commissioner in concluding that the 1981 complaint and its section 1983 cause of action failed to state a claim, and the Guzowskis have not alleged any other facts that, even if liberally construed, would support the state action requirement of a section 1983 claim. Thus, the district court in the instant action properly dismissed this cause of action as barred by the doctrine of issue preclusion.

To initiate an action under section 1985(3), a plaintiff must be a member of a class that traditionally receives protection under the suspect classification analysis of the Fourteenth Amendment. *See, e.g., National Communication Systems, Inc. v. Michigan Public Service Comm'n,* 789 F.2d 370, 374 (6th Cir.), *cert. denied,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986). Judge Churchill dismissed the previous section 1985(3) cause of action, which had been incorporated into the 1981 complaint, because the Guzowskis admitted there was no invidious class or race based discrimination and that they were not members of any protected class. Because the Guzowskis have not alleged membership in such a group in the 1984 complaint, and because they have not alleged any facts which liberally construed would give rise to a conclusion that they were in such a group, this district court in the instant ac-

---

5. A comparative review of the 1981 and 1984 complaints discloses that the 42 U.S.C. section 1983 cause of action alleged in the 1981 complaint was not anchored in the refusal of the defendants to assign stall space to the plaintiffs' horses. Rather, the refusal to assign stall space was the basis for the plaintiffs' section 2 Sherman Act antitrust claim, which was dismissed by the district court. That dismissal was not appealed.

Upon appeal, the Guzowskis advanced the argument that the racing secretary, although required to do so by statute, failed to properly manage tattooers, timers, guards, and others at the tracks, who in turn engaged in improper conduct involving the Guzowskis. The 1984 complaint advanced no such allegation and avoided any affirmative assertion that the racing secretary knew or should have known that any such violations or irregularities had occurred.

Moreover, assuming arguendo that such allegations of improper management were charged in the complaint, they would not have constituted the required "state action" to support a 42 U.S.C. section 1983 cause of action.

tion properly found the section 1985(3) cause of action barred by the doctrine of issue preclusion.

Since the Sherman Act section 1 count and the RICO count fail to state a claim, and since the Sherman Act section 2 count, the section 1983 count, and the section 1985(3) count are barred by the doctrine of issue preclusion, the district court's judgment dismissing the complaint in its entirety is AFFIRMED.