DONALD FRIEDMAN & COMPANY, INC., Respondent, *v.* LEO NEWMAN, Appellant.

(Argued November 18, 1930; decided January 6, 1931.)

*H. H. Nordlinger*, *David Haar* and *H. Louis Jacobson* for appellant. The Statute of Frauds is a complete defense to this action. (Williston on Contracts, § 1555.)

*Aaron H. Marx* and *Walter E. Godfrey* for respondent. The Statute of Frauds is no defense to the action. The reformation of a written contract is not prevented by reason of the statute. (*Porter* v. *Wormser*, 94 N. Y. 431; *Baird* v. *Erie Railroad Co.*, 148 App. Div. 453; *Rider* v. *Powell*, 28 N. Y. 310; *Beardsley* v. *Dantley*, 69 N. Y. 577.)

LEHMAN, J. The plaintiff corporation is a dealer in bank and insurance company stock. As the result of negotiations conducted over the telephone, it agreed to sell to the defendant ten shares of Chase National Bank. Then, in accordance with the usual custom in its business, it prepared a paper known as a " Confirmation of Sale." The " confirmation " was written on the business stationery of the plaintiff, signed by the plaintiff, addressed to the defendant, and thereafter signed by the defendant.

At the top appears the word " Confirmation," and it reads as follows:

" We beg to confirm our Sale to you to-day of 10 shares Chase National Bank at 1060 — 10600

"Accepted. L. Newman (signed)

" Delivery

" Bank of U. S.

" Pitkin Avenue

" Yours truly,
" DONALD FRIEDMAN & CO., INC.
" (signed)     by B. WILLUNG."

The plaintiff refused to deliver the stock in accordance with the terms stated in the " confirmation." It claims that in the telephone conversation the parties agreed to a sale at $1,160 per share, and that in the " confirmation " the price of 1060 per share was inserted by mistake. It insisted upon performance by the defendant in accordance with the terms of the alleged oral agreement. The defendant denied the mistake and insisted upon performance of the contract in accordance with the terms contained in the written memorandum or confirmation.

The defendant brought an action in the Municipal Court for damages caused by the refusal to deliver the stock at the price stated in the written confirmation. The plaintiff brought an action in the Supreme Court for reformation of the paper writing, purporting to confirm the sale, and asked damages for the refusal to accept and pay for the stock in accordance with the contract of sale. By order of the Supreme Court the two actions were consolidated and were tried together at Special Term. At the trial the defendant was permitted to amend his answer by inserting a plea of the Statute of Frauds. There was conflicting testimony as to the price at which the parties agreed the sale should be made. The trial judge resolved this conflict in favor of the defendant. The Appellate Division reversed the finding and gave judgment

in favor of the plaintiff, decreeing that "the said Confirmation of Sale setting forth the purchase price as $1060 per share for 10 shares Chase National Bank be reformed and corrected so as to express the true agreement between plaintiff and defendant as regards the said purchase price," and awarding to the plaintiff damages for the defendant's failure to accept and pay for the stock at that price.

The contract between the parties was oral. The paper executed thereafter, denominated " confirmation of sale " was, as its name and form clearly indicate, merely intended as a memorandum of the oral contract. It is evidence of an oral contract previously made. The oral contract is unenforceable unless a " note or memorandum thereof be in writing." (Pers. Prop. Law; Cons. Laws, ch. 41, §§ 31, 85.) Neither party may recover damages for the breach of the oral contract unless the paper writing signed by the parties sufficiently evidences the contract actually made.

" It is not sufficient that the note or memorandum may express the terms of a contract. It is essential that it shall completely evidence the contract which the parties made. If instead of proving the existence of that contract, it establishes that there was * * * a contract in terms and conditions different from that which the parties entered into, it fails to comply with the statute." (*Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310; *Berman Stores Co.* v. *Hirsch*, 240 N. Y. 209.) The memorandum is not subject to the parol evidence rule, for it does not integrate, but merely evidences, the oral agreement. It " may be shown by parol to be inaccurate or incomplete." (*Mesibov, Glinert & Levy* v. *Cohen Bros. Mfg. Co.*, 245 N. Y. 305, 313.)

The Statute of Frauds merely declares " void " or "unenforceable " a contract not in writing or evidenced by a note or memorandum in writing. It does not declare expressly or by implication that a written note or memorandum of an oral contract is conclusive evidence of the

terms of the contract. Doubtless a note or memorandum may constitute an admission of the making of the oral contract and of its terms, but neither the parol evidence rule nor the statute prevents the introduction of evidence contradicting the admission. Except as evidence of the oral contract, the memorandum has no force or effect unless and until the oral contract has been established by a preponderance of evidence. Then, if accurate and complete, it prevents the interposition of the Statute of Frauds as a bar to the enforcement of the oral contract.

Here the Appellate Division has found that the plaintiff sold to the defendant ten shares of Chase National Bank stock for which the defendant agreed to pay to the plaintiff the sum of $11,600. We cannot say that this finding is not in accordance with the weight of evidence. The defendant's cause of action was based upon the allegation that the sale was made at a lower price. He failed to establish that allegation to the satisfaction of the ultimate trier of the fact. The court was not called upon to exercise such equitable powers as it might have to defeat an unconscionable assertion by the defendant of a legal right. Proof that the plaintiff's admission contained in the memorandum was made through mistake justified the court in rejecting the admission. It could not by its fiat change the plaintiff's admission into an affirmation by the defendant of the contrary. Nor was such change necessary to defeat the defendant's cause of action. That cause of action failed when the court rejected the proof intended to establish it.

The court did, however, go further. It assumed a power to " reform " the paper writing so that it might constitute an accurate memorandum of the oral contract of sale, as actually made, and thus enable the plaintiff to assert a right to damages for breach of a contract, which would be " void " or " unenforceable " under the provisions of the Statute of Frauds. It is fair to say that neither party seriously challenged the existence of such a power. The

attention of the court and litigants was directed to the question of fact litigated at the trial, rather than to questions of law. The questions of fact involved more serious practical consequences to the litigants than the questions of law. Decision on the questions of law may have more far-reaching consequence.

Long before any Statute of Frauds was enacted, the jurisdiction of the courts of equity to rescind or reform written instruments which, because of mistake or fraud, did not embody the intention of the parties, was well established. Even then the extent of that jurisdiction was not free from doubt. In the early cases, equitable powers were freely exercised to relieve a defendant from obligations which were shown by parol evidence to have been inserted in a written instrument by mistake. Such powers were, at first, exercised hesitantly and doubtfully to enable a plaintiff to enforce disputed obligations in accordance with the intention of the parties, when parol proof showed that, by mistake, the written contract did not embody the true intention of the parties. In his luminous opinion in the case of *Gillespie* v. *Moon* (2 Johns. Ch. 585) Chancellor KENT vindicated the equitable power of the court to correct mistakes in bonds, deeds of settlements, in all contracts and agreements, and then to decree performance of the instrument in its corrected form.

In that case the court permitted the plaintiff to show by parol that a deed which in terms conveyed a tract of 250 acres was not intended to include a 50-acre farm which constituted part of the tract, and a decree was entered compelling the grantee to reconvey the 50-acre tract. The effect of the decree was to enforce the written instrument according to its true intent, rather than its written form, though the Statute of Frauds requires deeds of conveyance and instruments for the sale of land to be in writing. The effect of the Statute of Frauds as a possible limitation upon the exercise of equitable power of the court was not considered by the court in its

opinion; but the decision has been generally accepted as authority for the rule that the Statute of Frauds constitutes no bar to the exercise of the equitable powers of the court in similar circumstances.

To that extent, at least, the American courts have generally, perhaps universally, followed the decision in *Gillespie* v. *Moon*. The theory upon which the courts have justified the exercise of their equitable powers has been variously formulated in different jurisdictions and oftentimes the formulation of the theory has restricted or enlarged the field in which it might be exercised. Some courts have denied the power to enlarge the obligations of a contract, executed or executory, beyond the written terms, though they assert the right to correct mistakes by limiting the obligation as written to the actual intent of the parties. We do not now attempt to analyse the decisions of the various jurisdictions or to determine how far under the decisions of this State the courts have power to correct mistakes in written instruments and, in spite of the Statute of Frauds, to compel performance according to the intent of the parties rather than the form of the writing. It is sufficient to point out that in all these cases the question was whether the courts might exercise their well-established equitable power to correct mistake in a written instrument constituting a jural act, which at law could not be varied by parol, and then to give effect to the instrument as corrected, in spite of the provisions of the Statute of Frauds. The judgment now under review decrees the reformation of a written memorandum which was intended to evidence an oral contract. By such reformation, the memorandum has been given an evidentiary force which in its actual form it did not have, and validity has been given to an oral contract which the Statute of Frauds declares " void " or " unenforceable."

Under any theory of the equitable powers of the court to rescind or reform a written instrument because of mistake lies the basic fact that the written instrument has in

itself a legal force which cannot be denied, though by mistake it has been given a form and effect not intended when the instrument was made. "Unless the mistake precludes the existence of a contract at law, it should not be denied that the writing correctly states the actual contract or conveyance which has been made, but as it is inequitable to allow the enforcement of it, and (where reformation is appropriate) as justice requires the substitution of another in its place, equity gives relief; and to that end necessarily admits any relevant parol evidence." (Williston on Law of Contracts, vol. 3, § 1552.)

Here the parties made their contract by parol. There is dispute as to the terms of the contract. The parol evidence rule does not preclude either party from showing the actual agreement of the parties. A court of law might receive all the relevant testimony and determine what contract was made. No court of equity could change the contract made by the parties or reduce to writing what rested in parol. The parol contract is "void" or "unenforceable" under the provisions of the Statute of Frauds, unless a "note or memorandum thereof be in writing." The parties intended to make a note or memorandum of the contract they had made. By mistake the writing is a memorandum of a contract which in fact was never made. No note or memorandum of the contract which the plaintiff seeks to enforce was ever made. Therefore, that contract is "unenforceable" and no court of equity, by "reforming" the memorandum can give it an effect forbidden by the statute. Mistake by the parties resulting in failure to comply with the statute does not confer upon a court of equity the power to substitute for what they have done that which they should have done. Equity has at times power to reform an instrument which conclusively embodies the intent of the parties; it has no power to reconstitute an evidentiary writing. Though at times the Statute of Frauds may present no bar to the exercise of the court's equitable power to relieve against

fraud or mistake, there is no equitable power to enforce a contract which the statute declares void merely because through mistake of the parties their intention to make a valid contract was frustrated.

The judgment of the Appellate Division and that of the Special Term should be reversed and the complaint and counterclaim dismissed, without costs.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.