## SOYA PROCESSING CO. v. SIROTA et al.

United States District Court
S. D. New York.
April 15, 1952.

Hinds, Wight & Schrauff, New York City, Roger Hinds, New York City, Brooks W. MacCracken, Cleveland, Ohio, of counsel, for plaintiff.

Baer, Marks, Friedman, Berliner & Klein, New York City, Donald Marks, New York City, of counsel, for defendants Sirota.

IRVING R. KAUFMAN, District Judge.

This adjudication grows out of an action which commenced when plaintiff filed a complaint asking for a declaratory judgment that plaintiff has not entered into any contract with defendants for the sale of soy bean oil and has not contracted to settle any controversies with defendants by arbitration, and for a temporary and permanent injunction restraining defendants from proceeding further under a demand for arbitration made by them upon plaintiff.

Defendants pleaded, in substance, a general denial of plaintiff's allegations, and, as a defense and counterclaim, declared that plaintiff had made two contracts for the sale of soy bean oil to defendants of $29,737.50. Plaintiff replied with a general denial and the defense of the statute of frauds.

Upon agreement of the parties and by order of this Court the matter was referred to a Special Master pursuant to Rule 53 of the Federal Rules of Civil Procedure, 28 U.S.C.A. By stipulation pursuant to subdivision (e)(4) of Rule 53, the Special Master's findings are final with respect to the factual issues between the parties.

The Special Master heard and reheard both parties and has filed his Report, dated September 13, 1951, and a Supplement thereto, dated January 8, 1952, the Supplement being responsive to the objections raised by the parties to the September 13, 1951 Report and the additional argument on said objections.

Plaintiff has now moved this Court to confirm in part and overrule in part the two Reports of the Special Master and for a further order fixing the fee of the Special Master. The parties have raised their respective objections to the two Reports and, pursuant to Civil Rule 5(g) of the Southern District of New York,[1] the cause is now before this Court.

Two issues were before the Special Master by the order of this Court dated April 30, 1951:

(1) Whether on or about January 26, 1951 the contracts which are annexed to Exhibit B of the complaint as Exhibits A and B thereof, were entered into by Soya Processing Company and George Sirota & Sons.

(2) If it shall be determined that said contracts were entered into by said parties, whether the defendant partnership sustained damages by reason of plaintiff's refusal to recognize and perform said contracts, and if so, the amount of said damages.

Upon the reference, the Special Master determined that the first transaction involved in the case resulted in an oral agreement but that the "confirmation" intended to be a memorandum of that prior oral agreement did not correctly state the terms of the agreement. (The Special Master also concluded that the confirmation did not constitute an independent written contract but was intended to be a confirmation of the prior oral agreement.) Having drawn this conclusion, which defendants contest, the Special Master then held the first oral agreement unenforce-

1. Civil Rule 5g provides: "A motion to confirm or reject, in whole, or in part, a report of a master shall be heard by the judge appointing such master."

able since it did not meet the requirements of the statute of frauds.

The Special Master's conclusion of law in this connection rests upon his finding that the absence of any limitation as to direction of shipment, either east of Wooster or east of Decatur, was an omission of a material term of the written memorandum. I agree.

It is to this portion of the two Reports that defendants' objections are addressed. As I understand their argument, they contend:

(1) The broker's notes constituted written contracts and were not "mere memoranda" of oral agreements, but

(2) even if they were memoranda, the confirmation of the first transaction (the one found unenforceable by the Special Master) did not omit any material term of the agreement.

What I have called point (1) of that argument depends for its effectiveness on defendants' contention that: "When an agreement is reduced to writing so that it can be called a written agreement, the Statute of Frauds cannot be urged as a bar to its enforceability." [2]

The point is urged upon the Court on the authority of In re Huxley, 1945, 294 N.Y. 146, 61 N.E.2d 419, 169 A.L.R. 194. I do not find that case determinative of the issue before me. In clear language at page 149 of 294 N.Y., at page 420 of 61 N.E.2d, the Huxley case noted that the broker's confirmation there provided: "In the absence of such [formal] contract this memorandum represents the contract of the parties." No such provision appears in the instant confirmation, and the Special Master's finding that the confirmation there reads: "We, acting as brokers, *confirm having made* this day * * * the following transaction" (emphasis supplied) stresses the confirmatory rather than contractual nature of the instant broker's note.

Friedman & Co. v. Newman, 1931, 255 N.Y. 340, 174 N.E. 703, 73 A.L.R. 95, is more in point. It was there said at page 343 of 255 N.Y., at page 704 of 174 N.E.:

"The paper executed thereafter, denominated 'confirmation of sale,' was, as its name and form clearly indicate, merely intended as a memorandum of the oral contract. It is evidence of an oral contract previously made."

The factual setting of the instant agreement—the absence of any Huxley-like language in the confirmation and the prevailing trade practice of striking oral bargains through the broker who thereafter prepares a confirmation or memorandum setting forth the terms of sale agreed upon orally—fortifies the conclusion that the confirmation was just that, and not a contract as defendants urge.

I am persuaded even less by defendants' second argument: that even if this is a mere memorandum, the confirmation of the first transaction did not omit any material term of the agreement.[3] The Special Master found that the absence of the term "For shipment east of Wooster" in the broker's note of confirmation was an omission of a material term, and hence the statute of frauds makes that first transaction unenforceable. New York Personal Property Law, McK.Consol.Laws, c. 41, § 85; Poel v. Brunswick-Balke-Collender Co., 1915, 216 N.Y. 310, at page 314, 110 N.E. 619, at page 620, in which Seabury, J., held:

"It is not sufficient that the note or memorandum may express the terms of *a* contract. It is essential that it shall completely evidence *the* contract which the parties made." (Emphasis supplied.)

Defendants urge that the Special Master's finding that the term "For shipment east of Wooster" is material should be rejected because they conjecture that the practical result of the omission would be insignificant. The Special Master, on the other hand, rejects this conclusion and finds that the omission is most significant, since the term deals with a subject which could affect the purchase price by 2.6%.

2. P. 20, Defendants' Memorandum on motion to confirm in part and overrule in part the Report of the Special Master.

3. Ibid., P. 32 et seq.

Implicit in this whole argument is defendants' admission that what the Special Master suggests could in fact occur but that defendants' version should nevertheless be adopted because it is not likely that it will occur. The Special Master's findings of fact that the purchase price could be affected by 2.6% thus resulting in a diminution of that price to the seller of $4,500, must be accepted by this Court.[4] The legal conclusion of materiality is based squarely on a finding of fact which I accept as given.

Defendants' second level of argument is that the instrument issued by plaintiff on February 20, 1951, and delivered to defendants, was a memorandum covering both "contracts" and sufficient to satisfy the statute of frauds.[5] The Special Master's response to this argument is clear and appropriate, and I accept it as dispositive. The proposed contract tendered on that date was, as he found:

"* * * never * * * a binding agreement because it was not accepted according to its terms by the buyer. Nor is it a memorandum of the oral agreement since it does not conform to the terms of that agreement. Indeed the buyer itself rejected the tendered contract on this very ground." [6]

I hold that each and every objection raised by defendants to the Report and Supplemental Report of the Special Master is overruled.

Plaintiff's objections to the two Reports raise thornier problems than any of those posed by defendants. Plaintiff's disagreement with the Reports is essentially that the wrong rule of damages was applied to what was found by the Special Master

to be plaintiff's anticipatory breach of a binding contract arising out of the second transaction of January 26, 1951. It is to this argument and its ancillary features that I direct this portion of the opinion, for the other arguments raised by plaintiff do not seem to me to be meritorious. I believe that a fair paraphrase of plaintiff's significant argument is the following:

(1) No agreement was ever reached between the parties.[7]

(2) The second memorandum did not fulfill the requirements of the statute of frauds so that even if there was an agreement it is unenforceable as a matter of law.[8]

(3) But even if the agreement is enforceable, and even if it was anticipatorily breached, the measure of damages applicable thereto was incorrectly applied because:

(a) New York, not Ohio, law applies.[9]

(b) Subdivision 3, not subdivision 2 of Section 67, Uniform Sales Act applies. (Section 148 N. Y. Personal Property Law).[10]

(c) There were no special circumstances.[11]

I shall attempt to answer these arguments *seriatim.*

The parties did reach an agreement, and this conclusion is adequately supported by the Special Master's findings of fact.

■ Measured by exactly the same standards from which I hold the first confirmation did not meet the statute of fraud's requirements, I here hold that the second confirmation did fulfill the statute. The distinction between the two memoranda is clear and it fortifies my conclusion

---

4. See Order of this Court filed April 30, 1951.

5. Ibid., P. 28 et seq.

6. P. 2, Supplemental Report of the Special Master.

7. P. 26 et seq. Plaintiff's memorandum on objections to Report and Supplemental Report of Special Master.

8. No. 13 in both Plaintiff's "Objections to Report of Special Master" (filed Sep-

tember 27, 1951) and in Plaintiff's "Objections to Supplemental Report of Special Master" (filed January 19, 1952).

9. P. 15, Plaintiff's memorandum on Objections to Report and Supplemental Report of Special Master.

10. Ibid., P. 5 et seq.

11. Ibid., P. 7 et seq.

on the first transaction: the point of shipment provision was absent from the first confirmation and present in the second. The second confirmation embodies every provision necessary to make the oral agreement enforceable under the statute of frauds.

■ The Special Master's resolution of the problem of law before him rests initially on his recognition that there is a conflict of law problem arising out of the second transaction. On principle, this is most important. Without it, every succeeding step in the legal logic is one more step away from Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The Erie holding and its refinement in Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, compel this Court to apply, not necessarily the New York rule of damages, but necessarily the rule of damages which the New York courts would apply. The distinction is important to the integrity of the Erie policy.

As noted by the Special Master, the parties have assumed that since the contract was made in New York, New York law applies. But he finds that since the law of damages is the major problem here, the law of the place of performance and not the law of the place of the making of the contract obtains. Restatement of Law of Conflict of Laws, Section 413 and New York Annotations thereto; Dougherty v. Equitable Life Assurance Society, 1934, 266 N.Y. 71, 80, 193 N.E. 897. Section 413 states the rule applied by the Special Master and the New York Annotations suggest that this is in accord with the majority of New York decisions. The Dougherty case affirms this principle, certainly in obiter dicta, although the precise circumstances of that case—an explicit stipulation in the contract of the applicable law thereto—could conceivably have been as persuasive a practical reason for that holding as the general principle itself which the case states. Nonetheless, the

principle is a fair statement of the New York law on the conflict. Cf., Revillon v. Demme, 1920, 114 Misc. 1, 185 N.Y.S. 443, which appears to be an aberration from New York holdings on the problem.

The finding of the Special Master that Ohio was the place of performance is supported very substantially by the facts and by the reasoning he applied to them.

■ Since Ohio was the place of performance and New York law holds that in assessing damages the law of the place of performance controls, we must turn to Ohio law for rules governing the application of damages in the anticipatory breach. The applicable Ohio statute is Section 8447, Throckmorton's Ohio Code, Annotated.[12] Conceding arguendo that Ohio Law applies, plaintiff alleges that the applicable subdivision of the Section is subdivision 3, not subdivision 2. Subdivision 3 provides:

"When there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver."

The Special Master applied subdivision 2, which provides:

"The measure of damages is the loss directly and naturally resulting, in the ordinary course of events, from the seller's breach of contract."

Ohio law yields no authoritative statement of the exact distinction between and intent of these two sections. Section 8454,[13] Throckmorton's Ohio Code, Annotated seems to offer an intellectual oasis, which turns out to be but a mirage. It provides that the Chapter within which section 8447 is located:

"shall be so interpreted and construed, if possible, as to effectuate its

12. The identical provision is to be found in Section 67, Uniform Sales Act; Section 148, New York Personal Property Law.

13. The section is a provision in the Uniform Sales Act which states the policy of uniform application and is set out in the text of this opinion.

general purpose to make uniform the law of those states which enact it."

I find one Ohio case which apparently recognized the policy of applying the Uniform Sales Act uniformly with other states where the Act is operative. The problem there, however, is not involved in this case. Hutchinson v. Renner, 1928, 28 Ohio App. 22, 162 N.E. 451.

Resort to the Annotated Uniform Sales Act is equally fruitless. 1-A U.L.A. Section 74. It thus appears that aid in distinguishing between the two subdivisions in question must be sought elsewhere.

█ The Special Master relies heavily upon Renner Co. v. McNeff Bros., 6 Cir., 1939, 102 F.2d 664. I believe his position is well taken. There as here a contract right was involved. Speaking for the Court, Judge Allen said at page 667 of 102 F.2d:

> "Where, as here, there is an established market for the purchase and sale of such contract rights, the value of such rights at the time of breach is evidence of damage at the time of breach."

My reliance upon the Renner case is, I believe, consonant with the spirit and intent of the policy formulated by Erie R. Co. v. Tompkins, supra, and refined by Klaxon Co. v. Stentor Electric Mfg. Co., supra.

Since resort to the law as propounded by the state courts of Ohio yields no authoritative statement, reference to the decisions of the Court of Appeals of the Sixth Circuit would appear to be the next most productive source for this Court to turn to. The jurisdiction of that Court includes Federal District Courts sitting in Ohio, and it may be presumed that the Court of Appeals is learned in matters involving

Ohio law, and conversant with the manner in which Ohio state courts would apply Ohio law.

In view of the interpretation the Renner case places upon the measure of damages provision of the Uniform Sales Act in a situation such as the instant one,[14] I believe that a rational construction and comparison of the subdivisions lead to the conclusion that they are not mutually exclusive. Subdivision 2 is a statement of the essential principle upon which the buyer is to recover. Subdivision 3 is but a special application of that principle, namely, the situation where there is an available market for the goods in question and there are no special circumstances. The language of the Renner case itself strengthens this conclusion. Judge Allen stated at page 667 of 102 F.2d:

> "Appellant relies on Section 8444, General Code of Ohio, which in paragraph (3) states the rule of damages contended to be applicable, but qualifies the rule by adding the words 'in the absence of special circumstances.' Here there are special circumstances which place the case outside of the strict rule of the statute. It was necessary for appellee, in order to insure delivery under the contracts, to contract with growers of hops well in advance of the harvesting and at a price which might be different from the market price at the time appellee was required to deliver the hops to appellant. Since Section 8444, General Code, recognizes the possible existence of special circumstances as a reason for varying the general rule the application of the measure of damages made by the District Court was not in violation of the statute."

14. Aside from its invalid contention that New York law applies in this case, plaintiff urges that the Renner case is distinguishable from the instant situation because there the breach was committed by the buyer while here it was committed by the seller. All things considered, plaintiff is urging a distinction without a difference. The provision involved in the Renner case was section 8444, General Code of Ohio. Juxtaposition of that section with section 8447 here involved indicates that the respective subdivisions 2 and 3 of each of those statutes are essentially the same as far as the instant problem is concerned. An interpretation of section 8444 is most helpful in construing section 8447, and it is for this reason that so much stress is put upon the Renner case.

In the instant case there are, as the Special Master found, the special circumstances referred to in subdivision 3 of Section 8447, hence we are thrown back to subdivision 2 for the applicable rule. The contrary conclusion, which is the one urged by plaintiff, would lead me to apply a rule which that rule itself makes explicitly inapplicable in this situation of special circumstances.

Obiter, I note that even if New York law applied in this case, I do not agree with plaintiff that the cases of Segall v. Finlay, 1927, 245 N.Y. 61, 156 N.E. 97, and Dimon Corporation v. Federal Sugar Refining Co., 1925, 215 App.Div. 140, 213 N.Y.S. 106 would control. The special circumstances present here were absent in those situations, hence those courts applied subdivision 3 of Section 148, New York Personal Property Law.

I hold that each and every objection made by the parties to the Report and Supplemental Report of the Special Master is overruled.

The Report and Supplemental Report of the Special Master are confirmed.

I come now to the fixing of the Special Master's fee, and the determination of the party to pay such fee as requested in plaintiff's application to confirm in part and overrule in part the Report and Supplement thereto of the Special Master.

Being mindful of the Special Master's affidavit of services dated February 13, 1952, setting forth the time consumed by him, and appreciating the importance of the matter, the total amount involved as well as the standing of the Special Master at the bar and the thoroughness of his services, I fix the sum of $2,500 as his fee. I direct that one-half the fee be paid by plaintiff and one-half be paid by defendants within ten days from the date of the order hereon. In the event one of the parties does not pay its apportioned share, the other party promptly shall make said payment and shall include it as taxable costs against the non-paying party.

Settle order.