**Robert I. LAUTER, Plaintiff,**

v.

**W & J SLOANE, INC., et al.,
Defendants.**

No. 72 Civ. 3465.

United States District Court,
S. D. New York.

June 30, 1976.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for plaintiff.

Becker, Ross & Stone, New York City, for defendants.

## MEMORANDUM

LASKER, District Judge.

This diversity action arises out of the discharge of the plaintiff, Robert I. Lauter, from his position as President of the New York Division of the defendant W & J Sloane, Inc. (Sloane). Lauter sues Sloane for breach of an alleged three year employment contract (Complaint, ¶¶ 13–21) and asserts a separate claim against Sloane's two parent corporations, City Stores, Inc. (City Stores) and Bankers Securities Corp. (Bankers Securities), for the tort of intentional interference with his contract with Sloane. (Complaint, ¶¶ 22–25) He also asserts claims for misrepresentation and fraudulent misrepresentation against four individuals who hold positions of importance in all three corporate defendants, Leonard J. Novogrod, Isidore Newman II, Louis Melchoir and Gustave G. Amsterdam. Lauter claims that these men, each of whom was involved in the decision to hire him, induced him to leave a good position with another firm by misleading him as to the nature of the terms of the proffered employment with Sloane. (Complaint, ¶¶ 26–35) Lauter seeks damages from the corporate defendants of $272,000., representing the unpaid balance of his salary, the value of a variety of employment benefits of which he claims to have been deprived and the expenses he incurred in finding new employment. From the individual defendants he seeks damages of $500,000., the derivation of which is unspecified.

By their amended answer, the defendants deny the material allegations of the complaint, admitting only that Lauter was employed as President of Sloane's New York Division and that he was discharged. (Amended Answer, ¶¶ 8 and 10) They also assert several affirmative defenses, including, *inter alia*, that Lauter's contract claim is barred by the statute of frauds and that his discharge was justified by incompetence and misfeasance. (Amended Answer, ¶¶ 19 and 20) In addition, Sloane asserts three counterclaims, in which it alleges that during the course of negotiations for his employment by Sloane, Lauter misrepresented the value of certain profit sharing benefits he would forfeit at his previous job and thereby obtained an agreement to compensate him by an equivalent amount. By reason of this alleged misrepresentation Sloane claims to be entitled to rescind any contract of employment that may have been entered and, in addition, to recover money which it continued to pay Lauter for a period of almost a year subsequent to his discharge. (Amended Answer, ¶¶ 24–39)

The defendants move for summary judgment, asserting that the statute of frauds bars both the contract action against Sloane and the claim for interference with a contract against City Stores and Bankers Securities, and, with regard to the latter claim, that the parent corporations' economic interest in Sloane's welfare provides an absolute defense. Summary judgment is also

sought on the claims against the individual defendants on the ground that they are legally insufficient. Lauter cross-moves for the same relief both on his claim against Sloane for breach of contract and on Sloane's counterclaims.

For the reasons which follow, we agree with the defendants that they are entitled to judgment on all of the claims against them and that the existence of material issues of fact precludes summary relief to Lauter on Sloane's counterclaim.

## I. Factual Background

The following facts are undisputed.

Prior to his employment with Sloane, Lauter was Senior Vice President in charge of merchandising for Macy's New York (Macy's), a division of R. H. Macy & Co., a company he had been employed by for a period of 24 years. In the Fall of 1969 he began negotiations with representatives of Sloane looking toward employment as President of Sloane's New York Division. Following several meetings with the individual defendants, the last of which took place on the morning of November 3, 1969, Novogrod, the President of Sloane, sent Lauter the following letter (the Novogrod letter):

"November 3, 1969

Mr. Robert Lauter
3 Chester Drive
Rye, New York
Dear Bob:

This is to confirm our understanding arrived at this morning as to the terms of your employment with W & J Sloane. Your position will be President of the New York Division of W & J Sloane, which encompasses all the stores presently operated out of New York, plus the stores contemplated in Atlanta, Houston and Troy (Michigan).

The term shall be for three years with automatic renewal from year to year, unless either party gives ninety (90) days' prior notice.

The salary will be $105,000 per annum, plus a special payment of $25,000 for each of the first three years to compensate for the loss you are incurring from your present profit-sharing program.

A 5,000 share option will be recommended at the next meeting of the City Stores' Board of Directors. In addition, you will be given 3% of the increased profits before taxes over the 1969 profits of the New York Division of W & J Sloane.

If this meets with your approval, I would appreciate your signing one copy and returning same to me. If you should desire a more formal contract, I shall be happy to arrange it.

Sincerely,
/s/ Leonard J. Novogrod
Leonard J. Novogrod"

N:M

There is no evidence that Lauter ever signed and returned Novogrod's letter, and in this litigation he does not contend that he did so.[1] Rather, Lauter called Novogrod the day after he received the letter and indicated that he wished a formal contract to be drawn. (Ex. D, Stone Affidavit, November 14, 1975) Nevertheless, Lauter commenced work as President of Sloane's New York Division on December 8, 1969, without having executed a formal contract document,[2] and he held the position for approximately one year until he was discharged on November 2, 1970. Lauter asserts without contradiction that during the period of his employ, and for nearly a year thereafter, Sloane paid him in accordance with the terms of the Novogrod letter.[3]

---

1. When questioned at this deposition he first declared that he had not signed the letter, but later changed his response to "I don't know whether I did or didn't." (Ex. D, Stone Affidavit, November 14, 1975)

2. Although at least two drafts of such a document were circulated between Lauter and Sloane and their respective attorneys in the ensuing months (See Exs. B, I and N, Stone Affidavit, supra), a formal agreement was never consummated. (See Ex. B, Stone Affidavit, supra)

3. Melchoir testified at his deposition that Lauter received approximately $130,000 subsequent to his termination because "that was the equivalent of . . . one year's basic salary and bonuses as he was originally drawing it." (Ex. P., Pindyck Affidavit, December 5, 1975)

In this suit Lauter relies on an alleged oral contract of employment made on November 3, 1969, evidenced by the Novogrod letter. Sloane's position is that the letter represents only an offer which Lauter rejected in favor of negotiating for additional, more advantageous terms, that a final contract was never agreed upon and that Lauter's employment in the meantime was therefore an employment terminable at will. It argues further that the letter is in any event insufficient to satisfy the requirements of the statute of frauds as it incompletely evidences the terms of the asserted agreement of November 3. This contention is the principle focus of its argument on this motion.

## II. The Defendants' Summary Judgment Motion

### A. The Claim Against Sloane for Breach of Contract

Sloane argues that under the law of New York, which is controlling, a memorandum is insufficient to evidence an oral contract unless it contains all the material terms of the oral agreement, and that according to Lauter's own deposition testimony throughout this litigation, at least four important terms of the understanding were omitted from the Novogrod letter. In particular, Sloane emphasizes that Lauter himself has flatly asserted that in addition to the terms set forth in the letter, it was agreed at the November 3 meeting that:

1. he would receive a full salary for the first six months of disability; (Exs. D, E and G, Stone Affidavit, November 14, 1975);

2. he would receive a death benefit of six months' salary; (Exs. D, G and H, Stone Affidavit, supra);

3. the New York Division (on whose sales he was to receive a commission or override) would include, in addition to those stores specified in the letter, all stores opened thereafter east of the Mississippi, excluding Washington, D.C.; (Exs. G and K; and see I and J, Stone Affidavit, supra) and

4. he could, at his option and for his tax advantage, receive part of his salary in deferred compensation. (Exs. G and M; see L, Stone Affidavit, supra)

Lauter counters that the law only requires a memorandum which reflects the agreement with reasonable certainty, but that the Novogrod letter meets even the stricter standard urged by Sloane, because it contains "all the material and essential terms of the oral agreement made earlier that day." (¶ 3, Lauter Affidavit, January 13, 1976) By this assertion Lauter does not deny his previous contentions, but asserts that neither party considered the missing items essential or material. Moreover, he attempts to raise a factual issue as to whether these items were agreed to by reference to Novogrod's deposition testimony in which Novogrod recounted the phone conversation he had with Lauter on November 4. Novogrod's report of their discussion indicates that Lauter complained of the absence of these four items from the letter and that Novogrod denied that at least two of them, the death benefits provision and the expanded definition of the New York Division, had been agreed to. (Exhibit I, Pindyck Affidavit, December 5, 1975)[4] Fi-

---

4. Novogrod's testimony was as follows:

"Q. Do you know why you did not get it? [a copy of the November 3rd letter signed by Lauter]

A. I don't know why, but I would say he called me the next day and said, "This letter is okay as far as it went, but certain vital things have been left out of it.

I said, "What were they?"

He said, "You didn't mention anything in there about six months disability for sickness."

I said, "You are right. It should be in there. It was an oversight on my part."

Then, he said, "There are other things you didn't mention, six months death benefits."

I said, "That had never been discussed and that's not part of the deal."

He said, "You didn't mention anything about deferment."

I said, "I didn't note that deliberately because you said you wanted to discuss it with tax lawyers and auditors as to what would be the best way that you would want to split it up; get the best tax benefits out of it."

nally, Lauter strenuously urges that to apply the statute of frauds in this situation would be a misinterpretation of the law and a distortion of its fundamental purpose.

It is apparent from the affidavits and exhibits on this aspect of the motion that material issues of fact exist as to whether, on the morning of November 3, the parties agreed that Lauter would receive a death benefit of six months' pay and whether the agreed definition of the New York Division was broader than that reflected in the Novogrod letter.[5] It is equally apparent, however, although Lauter's attorneys have minimized its significance, that in addition to the terms specified in the letter it was also agreed at least that Luater was to receive a six months' disability benefit.[6] Lauter has consistently maintained that the disability provision was part of the arrangement (Exs. D, E and G, Stone Affidavit, November 14, 1975) and in his affidavit on this motion he does not controvert his previous testimony. Moreover, for his part, Novogrod conceded that the omission of this term from his letter was an "oversight." (See note 4, *supra*) The narrow issue, then, is whether, in the context of this controversy, the absence of this single provision from the Novogrod letter is enough to raise the bar of the statute of frauds.

We believe that under the law of New York it is.

The applicable statute is N.Y.G.O.L. § 5–701(1) which declares that:

"Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime." (N.Y.G.O.L. § 5–701(1) McKinney 1964).

For a hundred years the New York courts have emphasized that to satisfy this

---

He said, "You didn't mention that I would be in charge of all stores east of the Mississippi." I said, "We had discussed it." We hadn't resolved it because there were a lot of problems in that and I am not going to put ourselves in an inflexible position where we couldn't move—where we would be stifled and that is out." (Novogrod Deposition, Ex. I, Pindyck Affidavit, December 5, 1975)

**5.** The factual controversy is a peculiar one. In support of its motion, Sloane offers the consistent testimony of the plaintiff to show that the Novogrod letter is incomplete. It says, in effect, if Lauter's version of this agreement is accepted at 100% of its face value, the statute of frauds prevents his recovery. Cf. *General Overseas Corp. v. Republic Pictures Int'l Corp.,* 74 F.Supp. 698 (S.D.N.Y.1947). It does not, however, concede that all of these other items were in fact agreed upon, but contends instead that they were subjects of continuing negotiation which ultimately broke down. Lauter is thus enabled to point to Novogrod's denials with respect to the death benefits and the definition of the New York Division, which are entirely consistent with Sloane's defense that a meeting of the minds was never achieved, to show that material issues of fact exist as to whether the memorandum is complete. Under the circumstances, we think Lauter could well be held bound by his prior statements. He neither denies having made the damaging claims nor attempts to clarify or amend them. His simple assertion on this motion that "the letter contained all the material and essential terms of the agreement" (¶ 3, Lauter Affidavit, January 13, 1976) is disingenuous and states nothing more than a legal conclusion. Thus, a broader view of the issue on this motion might be whether, if Lauter's contentions are all true, the statute of frauds bars enforcement of the oral contract. It is clear from our discussion in the text which follows this note that our answer would be in the affirmative.

**6.** There also appears to be implicit agreement that Lauter was to be entitled to deferred compensation if he so desired. According to Novogrod he omitted the term from the letter "because [Lauter] said [he] wanted to discuss it with his tax lawyers and auditors . . . ." (See n. 4, *supra*) If this were the only omission from the letter it might be viewed as the kind of detail which is not essential to the enforceability of the contract, because in the event of a failure to agree, the law would imply reasonable and customary terms of payment. See *N. E. D. Holding Co. v. McKinley,* 246 N.Y. 40, 45, 157 N.E. 923 (1927) and text at 259 infra. We are not at all sure that it is such a detail, however, and if it appeared more plainly that this term, too, had also been agreed upon, Lauter's burden on this motion would be even greater.

statute and its predecessors, a memorandum "must contain all the substantial and material terms of the contract." *Drake v. Seaman,* 97 N.Y. 230, 234 (1884). In *Poel v. Brunswick-Balke-Collender Co.,* 216 N.Y. 310, 110 N.E. 619 (1915) the court elaborated the requirement as follows:

> "In order to satisfy the requirements of the statute of frauds the written note or memorandum must include all the terms of the completed contract which the parties made. It is not sufficient that the note or memorandum may express the terms of a contract. It is essential that it shall completely evidence the contract which the parties made. If instead of proving the existence of that contract, it establishes that there was in fact no contract or evidenced a contract in terms and conditions different from that which the parties entered into, it fails to comply with the statute." 216 N.Y. at 314, 110 N.E. at 620.

The principle has been strictly applied in numerous cases. See, e. g., *Standard Oil Co. v. Koch,* 260 N.Y. 150, 183 N.E. 278 (1932); *Donald Friedman & Co. v. Newman,* 255 N.Y. 340, 174 N.E. 703 (1931); *Villano v. G. & C. Homes, Inc.,* 46 A.D.2d 907, 362 N.Y.S.2d 198 (2d Dept. 1974), appeal dismissed, 36 N.Y.2d 918, 372 N.Y.S.2d 655, 334 N.E.2d 601 (1975); *Nathan v. Spector,* 281 App.Div. 451, 120 N.Y.S.2d 358 (3rd Dept. 1953); *Soya Processing Co. v. Sirota,* 104 F.Supp. 428 (S.D.N.Y.1952); *General Overseas Corp. v. Republic Pictures Int'l Corp.,* 74 F.Supp. 698 (S.D.N.Y.1947). Most recently, in an action for recovery in *quantum meruit,* the New York Court of Appeals added the following caveat to a discussion which liberally interpreted the requirement that there be some writing which evidences the obligation:

> "We specifically note that in reaching this conclusion we do no violence to the well-established rule that in a contract action a memorandum sufficient to meet the requirements of the Statute of Frauds must contain expressly or by reasonable implication *all* the material terms of the agreement, including the rate of compensation if there has been agreement on that matter (*Poel v. Brunswick-Balke-Collender Co.,* 216 N.Y. 310, 314, 110 N.E. 619, 620; *Donald Friedman & Co. v. Newman,* 255 N.Y. 340, 174 N.E. 703, 73 A.L.R. 95; Restatement, 2d, Contracts, § 207 [Tent. Draft No. 4, 1968])." *Morris Cohon & Co. v. Russell,* 23 N.Y.2d 569, 575, 297 N.Y.S.2d 947, 953, 245 N.E.2d 712, 715 (1969). (emphasis supplied)

It thus appears that unless there is an exception to this principle which applies to the facts at hand, or the disability provision is not a material term or the absence of an evidentiary dispute that the term was agreed upon removes the bar, the statute of frauds bars Lauter's recovery on the alleged contract.[7]

■ The courts have recognized two exceptions or qualifications to the requirement of completeness: where the missing term is determinable by necessary implication or construction by reference to objectively ascertainable facts and does not require proof of additional oral words of promise, the statute of frauds will not preclude enforcement of the contract; *Marks v. Cowdin,* 226 N.Y. 138, 123 N.E. 139 (1919); and where the missing term is a detail left for later agreement relating to

---

7. The language of Chancellor Kent in *Bailey v. Ogden,* 3 Johns. 399, 3 Am.Dec. 509, quoted in *Mentz v. Newwitter,* 122 N.Y. 491, 25 N.E. 1044 (1890), that a memorandum must state the terms of the contract "with reasonable certainty," 122 N.Y. at 496, 25 N.E. 1044, may not, in view of the later cases cited in the text above, or even in view of the holding of *Mentz* itself, be read as definitively declaring a less stringent standard of completeness. The other cases cited by the plaintiff for a looser interpretation of the statute, *Farr v. Newman,* 18 A.D.2d 54, 238 N.Y.S.2d 204 (4th Dept. 1963) and *Kroll v. Zimmerman,* 88 N.Y.S.2d 444 (S.Ct. Nassau Cty. 1949), are explicable by reference to the long-standing qualifications to the general rule of *Marks v. Cowdin,* 226 N.Y. 138, 123 N.E. 139 (1919) and *N. E. D. Holding Co. v. McKinley,* 246 N.Y. 40, 157 N.E. 923 (1927). See text at 258–259 infra. The court's discussion in *Tioga County General Hospital v. Tidd,* 164 Misc. 273, 284, 298 N.Y.S. 460, 473 (S.Ct. Tioga Cty. 1937) is an *ipse dixit* and is unpersuasive.

matters such as the date of delivery of a deed, for which the law will imply terms of reasonableness in the absence of agreement, the statute will similarly not defeat the action. *N. E. D. Holding Co. v. McKinley,* 246 N.Y. 40, 45, 157 N.E. 923, 924 (1927). Neither of these cases is of use to Lauter here. The missing disability benefits provision changes the memorandum, it does not explain it, compare *Marks v. Cowdin, supra,* and the law implies no comparable terms in the absence of specific agreement. Compare *N. E. D. Holding Co. v. McKinley, supra.*

■ Lauter's argument that the six months' disability provision is not material is unpersuasive. In the event Lauter became disabled he was to receive half a year's salary ($52,500). This represents 16⅔% of the entire three year salary. The disability term was a part of Lauter's compensation, a portion of the consideration for this contract, just as much as the base salary, the annual $25,000 special payment or any of the other terms described in the Novogrod letter. The fact that the disability benefit is contingent does not render it immaterial. The statute's requirement of completeness would be substantially undermined if recovery could be had on an incomplete memorandum simply because the missing item or items were contingent in nature and by the time of the lawsuit had been rendered moot by the failure of the contingency to materialize. Both *Soya Processing v. Sirota, supra,* 104 F.Supp. 428 (S.D.N.Y.1952) and *General Overseas Corp. v. Republic Pictures Int'l Corp., supra,* 74 F.Supp. 698 (S.D.N.Y.1947) involved contingent items which could have affected the contract price. In both, the omission of the contingent obligation from the statutory memorandum rendered the oral contract unenforceable, even though in *Soya Processing,* for example, the missing provision was one which could have affected the price by only 2.6%. 104 F.Supp. at 430.

■ The absence of an evidentiary dispute as to the parties' agreement on the disability provision raises a more trouble-some question. The statute of frauds, after all,

"was designed to guard against the perils of perjury; to prevent the enforcement of unfounded claims . . . 'not . . . to . . . enable defendants to interpose the Statute as a bar to a contract fairly, and admittedly, made.' (4 Williston, Contracts [3d ed.], § 567A, pp. 19–20)." *Morris Cohon & Co. v. Russell,* 23 N.Y.2d 569, 574, 297 N.Y.S.2d 947, 952, 245 N.E.2d 712, 715.

Where, as here, there is no dispute that the disability provision had been agreed upon, it may at first appear unduly rigid to bar the action. Cf. *Marks v. Cowdin, supra,* 226 N.Y. 138, 143, 123 N.E. 139 (1919). But we conclude that in the circumstances of this controversy, the statute nevertheless applies.

The New York cases, and decisions in the federal court applying New York law, reflect a consistently stringent adherence to the requirement that the memorandum be a complete reflection of the agreement that was made. See cases cited at page 258, *supra.* A dramatic example of this view, and one which has direct relevance to this case, is *Standard Oil Co. v. Koch, supra,* 260 N.Y. 150, 183 N.E. 278 (1932). There, the Court of Appeals held the statute a bar to the plaintiff's suit on a guarantee evidenced by a notably thorough memorandum, on the face of which it is entirely clear that the defendant in fact committed himself to the guarantee. The memorandum, however, reflected that the guarantee was made with regard to both future and past deliveries on credit from the plaintiff to the defendant, and nowhere recited the plaintiff's consideration for the guarantee. Although the Court was willing to imply consideration for the guarantee of future deliveries from the circumstances of the transaction, see *Marks v. Cowdin, supra,* (i. e., that the plaintiff was obviously agreeing to make future deliveries), it denied enforcement because the consideration for the guarantee of past purchases was neither stated nor readily inferable. This was the ruling of the State's highest court despite the fact that there was undisputed

evidence of the nature and terms of the bargain that was in fact struck. The opinion invoked the language of *Poel v. Brunswick-Balke-Collender Co., supra,* that the memorandum must "completely evidence the contract which the parties made" and applied the statute despite its recognition that

> "We . . . have in this case oral evidence of a contract about which there seems to be little or no dispute. It cannot be enforced because the action, to be performed by both parties, was executory and the writing required by the statute fails to state the agreement." 260 N.Y. at 155, 183 N.E. at 279.

Although the nature of the omission in *Standard Oil* may arguably be more fundamental to the bargain than the omission of the disability benefit from the Novogrod letter, the case clearly controverts the proposition that wherever the parties do not dispute that a particular item has been omitted from a memorandum the New York courts consider the purpose of the statute of frauds to be served and allow the litigation to proceed to the merits of the claimed contractual breach.

The only New York decision we have found in which the court relied even partially on the absence of an evidentiary dispute as to a missing term to supplement an incomplete writing is *Martocci v. Greater New York Brewery,* 301 N.Y. 57, 92 N.E.2d 887 (1950). There the Court of Appeals found sufficient written evidence of an oral contract for sales commissions and rested its finding in part on the basis of the defendant's admission in the pleadings that such a contract had in fact been made. As in *Standard Oil,* the writing on which the plaintiff relied did not state the consideration to be furnished by the plaintiff. The *Martocci* court found that this element was adequately supplied by a second writing, which itself provided a very strong inference of the plaintiff's consideration, when that writing was viewed in the light of the

defendant's admission in his pleadings and other persuasive evidence of the circumstances of the parties' business relationship. The court thus placed primary reliance on the principle of *Marks v. Cowdin, supra,* 301 N.Y. at 63, 92 N.E.2d at 889, that a missing item may be supplied where it appears by necessary implication through proof of extrinsic, objective facts. What is striking about the decision is not that the court considered the admission in its analysis, but the extremely limited role accorded to it. It was only one of several factors which, taken together, amplified a second writing by the defendant and supplied the missing item. Such other factors are wholly absent from this case.

In the last analysis Lauter is suing on an alleged oral contract governed by the statute of frauds evidenced by a memorandum from which a material term of the agreement is concededly absent. We think that under applicable law, the contract may not be enforced.[8] Application of the statute in this case is not inconsistent with its basic purpose. We are not dealing with a defendant who, as in *Martocci,* is attempting to assert the statute of frauds as a defense to a contract "admittedly made." *Morris Cohon & Co. v. Russell, supra,* quoting Williston. If Sloane conceded that an oral contract had been reached and that Novogrod's letter entirely evidenced that agreement but for an inadvertent omission of the disability term, we might agree that it would not be entitled to assert the statute of frauds as a defense. This, however, is far from the case. To the contrary, Lauter and Sloane vigorously dispute whether any contract at all was made on November 3 and throughout this lawsuit *neither of them* has asserted that the Novogrod letter is a complete reflection of the agreement, or, to use Sloane's term, the offer. Lauter himself has consistently maintained not only that the disability benefits term was omitted from the Novogrod letter but that at

---

8. The suggestion in *Ginsberg Machine Co. v. J. & H. Label Processing Corp.,* 341 F.2d 825, 828 (2d Cir. 1965) that a term is not "essential" and therefore not required in the memorandum if

there is no evidentiary dispute with regard to it is unsupported by any citation to New York authority and, as our discussion reflects, we have found none to support it.

least two other material terms were omitted as well. We would have no hesitancy at all in holding that the statute of frauds would bar his suit if it were established at trial that this was the case. In earlier stages of this litigation he has even indicated a desire to recover on the basis of these missing terms, although he subsequently modified his position.[9] Sloane, on the other hand, maintains that the Novogrod letter constituted an offer which Lauter rejected. Although it admits that a term of that offer, the disability provision, was erroneously omitted from the letter, it differs to material degree with Lauter's assertion as to what occurred on the morning of November 3.[10] Thus, in order to prevail at trial Lauter would not only have to overcome Sloane's strong evidence that no contract was ever entered; he would as well have to prove an oral agreement significantly narrower in scope than that he has on many occasions previously alleged. It is to avoid precisely such vagaries that the statute of frauds requires a writing which completely evidences the agreement reached. Where the writing has been demonstrated to be incomplete in any material respect, suit on the alleged contract is barred.

### B. *The Claim of Interference With a Contract*

■ Our determination that the statute of frauds bars Lauter's contract action against Sloane disposes as well of his claims against City Stores and Bankers Securities for intentional interference with the contract and renders unnecessary a consideration of whether these defendants are entitled to judgment because of their economic interest in Sloane. No suit may be brought against third persons for tortious interference with a contract which is unenforceable by virtue of the statute of frauds absent a claim that but for the interference, the parties would have abided by the contract despite its unenforceability. See *Warner Bros. Pictures, Inc. v. Simon,* 21 A.D.2d 863, 251 N.Y.S.2d 70 (1st Dept. 1964), aff'd, 15 N.Y.2d 836, 257 N.Y.S.2d 947, 205 N.E.2d 869 (1965); 56 N.Y.Jur., Statute of Frauds, § 342 (1967). Compare *Rice v. Manley,* 66 N.Y. 82, 87 (1876). Lauter makes no such

**9.** In answer to an interrogatory requesting him to specify the employment benefits of which he claims to have been deprived in Paragraph 20 of the Complaint, Lauter listed the six months disability and death benefits promised to him, (Ex. T, Stone Reply Affidavit, December 23, 1975), but later deleted "and death benefits" from this answer. (Ex. V, Stone Affidavit, *supra*) Not until oral argument did Lauter's counsel affirmatively represent that damages would be sought only on those items specified in the Novogrod letter.

**10.** Indeed, the evidence submitted by Sloane that Lauter rejected the terms of the Novogrod letter and continued to negotiate a more favorable agreement, and that the Novogrod letter therefore does not represent a meeting of the minds, is very persuasive. Lauter admits that he called Novogrod the day he received the letter and requested a more formal contract. (Ex. D, Stone Affidavit, November 14, 1975) Lauter's handwritten notes on his copy of the Novogrod letter strongly suggest that he had many reservations about the completeness of the terms there specified, (Ex. F, Stone Affidavit, *supra*) and his response to questioning about these notes lends further weight to this conclusion. (Ex. J, Stone Affidavit, *supra*) Moreover, in a copy of the draft of a formal contract which defines the New York Division essential-ly as does the Novogrod letter, Lauter's attorney noted in the margin "This is not the deal Lauter wanted," (Ex. I, Stone Affidavit, November 14, 1975) and in a subsequent letter to Sloane's attorney he stated "I believe Mr. Lauter has a different understanding about the definition of the New York Division." (Ex. J, Stone Affidavit, *supra*) Lauter's deposition confirmed that these remarks reflect his position that the agreement was to include all new stores east of the Mississippi in the New York Division, and that this had been agreed to before November 3. (Ex. K, Stone Affidavit, *supra*) The importance of this dispute is clear in view of Lauter's right to a percentage of the increased profits of this Division. Additionally, there is the fact that several drafts of a formal agreement passed between the parties' attorneys and it was not until September, 1970 that Lauter finally returned a signed copy to Sloane for execution. (Ex. N, Stone Affidavit *supra*) These facts, uncontradicted and unexplained by Lauter, strongly suggest either that there was never a meeting of the minds at the November 3 meeting, and/or that there were material terms which had been left for later agreement. See *Ansorge v. Kane,* 244 N.Y. 395, 155 N.E. 683 (1927); *Willmott v. Giarraputo,* 5 N.Y.2d 250, 184 N.Y.S.2d 97, 157 N.E.2d 282 (1959).

allegation in his complaint, and it is apparent from his arguments and exhibits on this motion that this is not his claim. Rather, he alleges that Novogrod, as President of Sloane, was the primary motivating force behind his discharge, and that the parent corporations' culpability lies in their acquiescence in Sloane's contract breach. (Exs. O and P, Stone Affidavit, November 14, 1975) It is thus Lauter's position that entirely apart from the action of these two defendants, Sloane, the other party to the contract, was through Novogrod, its President, intent upon repudiating it; he does not claim that the actions of these defendants prevented an otherwise willing party from carrying out its bargain.

■ Moreover, even if Lauter's contentions could be construed to fall within the holding of *Rice v. Manley, supra,* 66 N.Y. 82, his action against City Stores and Bankers Securities cannot be maintained. Because his contract of employment was unenforceable, Lauter was an employee at will. See *Belfert v. Peoples Planning Corp.,* 22 Misc.2d 753, 199 N.Y.S.2d 839, 843 (S.Ct. N.Y. Cty. 1959), *aff'd,* 11 A.D.2d 760, 202 N.Y.S.2d 101 (1st Dept. 1960), *aff'd,* 11 N.Y.2d 755, 226 N.Y.S.2d 693, 181 N.E.2d 630 (1962). His termination was therefore entirely within the discretion of Sloane and although there is respectable opinion to the contrary, see W. Prosser, The Law of Torts, § 129 at 931–32 (4th ed. 1971), the consistent holding of the New York courts has been that no action lies for inducement to exercise a lawful right of termination. *Gross v. Gross,* 31 Misc.2d 934, 221 N.Y.S.2d 785 (S.Ct. Kings Cty. 1961); *Neville v. Waring,* 19 Misc.2d 736, 192 N.Y.S.2d 194, 196 (S.Ct. Kings Cty. 1959); *Steward v. World-Wide Automobiles Corp.,* 20 Misc.2d 188, 189 N.Y.S.2d 540, 549 (S.Ct. Qns. Cty. 1959); *Harris v. Home Indemnity Co.,* 16 Misc.2d 702, 185 N.Y.S.2d 287 (S.Ct. N.Y. Cty. 1959); *Luisoni v. Barth,* 2 Misc.2d 315, 137 N.Y. S.2d 169, 172 (S.Ct. N.Y. Cty. 1954); *E. R. Squibb & Sons v. Shapiro,* 64 N.Y.S.2d 368 (S.Ct. N.Y. Cty. 1945), *appeal dismissed,* Sup., 64 N.Y.S.2d 176 (1st Dept. 1946). And see *Wegman v. Dairylea Cooperative Inc.,* 50 A.D.2d 108, 376 N.Y.S.2d 728, 736 (4th Dept. 1975).

### C. *The Claims Against the Individual Defendants*

Lauter asserts two claims for relief against the four individual defendants, for misrepresentation and for fraudulent misrepresentation. He alleges that the defendants represented to him that he would be employed as President of Sloane's New York Division according to the terms of the Novogrod letter of November 3; that in reliance on these representations Lauter left Macy's and joined Sloane; that Sloane now denies that it is bound by the promises and representations made by these defendants; and that if Sloane is correct, the promises and representations of necessity were false. (Complaint, ¶¶ 26–35) In addition he charges that the individual defendants knew or should have known that the representations were untrue and that Lauter would rely upon them. (¶ 35)

■ We agree with the individual defendants that these allegations are insufficient as a matter of law. Conspicuously absent from Lauter's complaint and his arguments and exhibits on this motion is any contention that the defendants intended at the time the representations were made that they would not be binding. Indeed, any such contention would be contradicted by the fact that Lauter could have made the terms of the letter binding simply by signing and returning it to Novogrod. To argue that the defendants are guilty of misrepresentation and fraud because they negotiated with Lauter to enter a contract with Sloane which was subsequently breached and in the ensuing litigation the contract was held to be unenforceable is, as the defendants argue, a *non sequitur.* Were these contentions directed at Sloane, the claim would be dismissed as redundant to the contract claim and Lauter's legal recourse would be limited to his action *ex contractu. Wegman v. Dairylea Cooperative Inc.,* 50 A.D.2d 108, 376 N.Y.S.2d 728, 734–35 (4th Dept. 1975); *Miller v. Volk &*

*Huxley, Inc.*, 44 A.D.2d 810, 355 N.Y.S.2d 605 (1st Dept. 1974).

### III. The Plaintiff's Summary Judgment Motion

Lauter cross-moves for summary judgment both on his contract claim against Sloane and on Sloane's three counterclaims against him, all of which center on the contention that in negotiating for his employment, Lauter misrepresented the value of profit-sharing benefits which he would be forfeiting by leaving Macy's and thereby induced Sloane to agree to pay him $25,000 a year in addition to his salary. Sloane claims entitlement to recission of any contract it may be found to have entered and, in addition, to a return of the $126,656 paid to Lauter subsequent to his discharge.

Our disposition of the defendants' motion in Part II above, renders moot Lauter's motion for judgment on his claims as well as the first two of Sloane's counterclaims, which seek recission of any contract found to have been entered. The only remaining item for consideration is Sloane's third counterclaim seeking a return of the payments made by it to Lauter, because "had Sloane known of the falsity of [the representations as to the profit sharing plan] at the time of the termination of plaintiff's employment, Sloane would not have made said payments to plaintiff." (Answer, ¶ 38)

Lauter does not challenge the legal sufficiency of this claim for relief, but demands judgment because "the record does not support defendant's contention that Lauter represented that he would forfeit $75,000. in profit sharing," nor that Sloane would not have continued to pay Lauter subsequent to his termination if it had known of the overstatement of the lost profit-sharing benefits. (¶¶ 26–27, Pindyck Affidavit, December 5, 1975) In support of this motion Lauter submits portions of his deposition testimony as well as those of Novogrod and Newman which tend to support this argument, and in opposition Sloane offers portions of the depositions which tend to negate it. The existence of a material factual dispute as to 1) whether Lauter represented that the value of his profit sharing benefit at Macy's was $75,000. and thereby induced Sloane to agree to the three special payments of $25,000., and 2) whether Sloane would have continued payments to Lauter subsequent to his discharge had it known of the misrepresentation, is manifest. Accordingly, Lauter's motion for summary judgment on the third counterclaim is denied.

The defendants' motion for summary judgment is granted. The plaintiff's cross-motion for partial summary judgment is denied.

Submit orders on notice.